No. 13,073.

## HAMILTON v. THE STATE.

HIGHWAY.—*Abandonment.*—*Presumption.*—*Statute of Limitations.*—*Estoppel.*—*Obstruction of Highway.*—Where a public highway, through a given district or neighborhood, or along a particular line, has been maintained for more than twenty years, substantially of a uniform width, less than that at which it was laid out and established, and valuable improvements, as fences, etc., have been made in good faith on the appearance of things, the law will presume an abandonment of so much of the highway as has been thus occupied; and the public will be estopped to assert its rights by means of criminal prosecutions against adjoining land-owners for obstructing the highway by so narrowing it.

From the Decatur Circuit Court.

*C. Ewing* and *J. K. Ewing,* for appellant.

*F. T. Hord,* Attorney General, and *W. B. Hord,* for the State.

MITCHELL, J.—The appellant was prosecuted and convicted upon an information in which he was charged with having, in January, 1885, unlawfully obstructed a certain public highway in Decatur county, by erecting a fence in and along the highway described.

Several questions are made, but one which controls the case finally is, whether upon the undisputed facts the conviction was right? We have concluded it was not, and, therefore, without considering several incidental questions, proceed briefly to state the facts so far as necessary and our conclusions upon them. The highway, the obstruction of which the appellant was charged with, is commonly known as the "Michigan Road." The laying out and opening of this road had its inception in a treaty between the government of the United States and the Potawatamie Indians, which was made on the 26th day of October, 1826. By this treaty the Indians ceded to the United States a strip of land, one hundred feet wide, commencing at Lake Michigan and extending by the way of Indianapolis to the Ohio river. It was provided in the treaty that the General Assembly of the State

of Indiana should have the right to establish a highway on the land thus ceded. By an act approved January 29th, 1831, the General Assembly made provision for locating and opening a highway of the width of one hundred feet on the strip ceded.

The evidence in this case tended to show that soon after the passage of the above mentioned act, the road was actually opened one hundred feet wide through that part of Decatur county at which the alleged obstruction occurred.

Some thirty years or more before the prosecution was commenced, the opinion prevailed, as the testimony shows, that the Legislature had authorized the width of the Michigan road to be reduced, and from that on, as fences were built and rebuilt, the road was made narrower generally, all along through that part of the county.

The appellant's father became the owner of the farm now owned by appellant, some twenty-two years or more before the information in this case was filed. At that time, a worm fence which then needed rebuilding occupied, as near as can be remembered, the same line along the highway in dispute, as is now occupied by the fence which is the obstruction complained of. From time to time as the fence needed rebuilding it has been rebuilt on the same line. About two years before the information was filed, the appellant, having come into possession of the farm, commenced replacing the worm fence with one made of plank and wire, which all agree is not farther out than the old fence was. The highway is by common consent as wide now as it has been for twenty-five years or more. No one claims, so far as we can discover, that the appellant's fence is out farther than the fences of adjacent land-owners in that vicinity, or that the road is not of a uniform width for miles either way.

The public having acquiesced in the occupation of the highway by the adjoining land-owners for the period of time above indicated, will the law presume an abandonment of so much of it as has been thus occupied? At all events, is not the

public, in view of its long acquiescence, estopped to assert its right, if it has a right, by means of criminal prosecutions, against those who had acted in good faith on the appearance of things, as they have been allowed to exist for twenty years and more?

Manifestly, if none but the appellant, or if only an isolated person here and there along the line, had intruded or encroached upon the Michigan Road, by merely extending the line of fence into or upon it, no presumption of an abandonment could have arisen from that fact. Something more than the encroachment merely of one person will be required to work an abandonment. No one would have the right to assume under ordinary circumstances, that a highway had been abandoned along his field or farm, while as to all other adjacent fields and farms it was being maintained the width at which it was laid out and established. On the other hand, if, through a given district or neighborhood, or along a particular line, a highway had been maintained, substantially of a uniform width, less than that at which it was established, for twenty years or more, an abandonment by lawful authority might well be presumed, so far as the excess is concerned along that part of the line. We think this is the fair result of the cases and a reasonable view of the subject.

Where the public authorities have permitted the owners of property along the line of a highway to occupy and improve their property in such a way, and had acquiesced for such a length of time, as that to involve such owners in criminal consequences, although acting in good faith on the appearance of things, would be manifest injustice, an abandonment will be presumed. Where the owner or occupant of lands along a highway does nothing more than to maintain the highway at the general uniform width at which it has been maintained by adjoining owners for twenty years or more, it would be manifest injustice to maintain a criminal prosecution against such owner. Whatever else the public may do, it can not assert its right to re-open the highway by that method.

In such a case as we have assumed, a presumption of abandonment will be indulged, and when to disturb long established lines would involve criminal consequences or work serious injury to valuable improvements made in good faith, such presumption will be conclusive. *Brooks* v. *Riding,* 46 Ind. 15; *Jeffersonville, etc., R. R. Co.* v. *O'Connor,* 37 Ind. 95; *Sims* v. *City of Frankfort,* 79 Ind. 446; *Louisville, etc., R. W. Co.* v. *Shanklin,* 98 Ind. 573; *Amsbey* v. *Hinds,* 46 Barb. 622; Angell Highways, section 323; Dillon Munic. Corp., sections 667–675.

While it is true that the statute of limitations operating alone may not bar the right of the public to insist upon the use of a highway, yet, if such appearances are created by nonuser, as that acts are done by an adjoining proprietor which indicate that he is in good faith claiming as his own that which is in fact a part of the highway, and is expending money on the faith of his claim, by adjusting his property to the highway as he supposes or claims it to be, the public will be estopped. *Cheek* v. *City of Aurora,* 92 Ind. 107.

The finding and judgment in this case are not sustained by the evidence.

Judgment reversed.

ELLIOTT, J., did not participate in the decision of this case. Filed May 18, 1886.