Argued 3 February; decided 24 February, 1903.

## SCHOOLING *v.* HARRISBURG.

[71 Pac. 605 ; 9 Munic. Corp. Cas. 705]

INJUNCTION AGAINST TRESPASS—SUFFICIENCY OF TITLE.

1. The holder of a courtesy interest in land is enough of an owner to maintain a suit to prevent a seizure and permanent diversion of the land to an unauthorized use.

DEDICATION OF STREETS BY RECORDING PLAT.

2. The recording of the plat of a tract of land, showing streets thereon, and the sale by the owners of lots as shown on such plat, constitute a dedication by the signers of the land shown as public ways.

MUNICIPALITY—LOSS OF STREET BY NONUSER—ESTOPPEL.

3. Highways and streets may be lost to the public by continued nonuser and failure of the public authorities to accept the dedication thereof; thus, in 1871, plaintiff's predecessors in title acknowledged and recorded a plat of an addition to defendant city on which certain streets were marked, and thereafter conveyed lots in the addition with reference to the recorded plat. The streets and alleys so designated were never opened, and the donation was never accepted by the public, but the owners fenced the land, which was then and since continuously has been used by plaintiff and his grantor as a farm, fruit trees being planted in the streets, and a barn being erected across one of the alleys so designated. No steps were taken by the city to open the streets until April 16, 1901, when the city marshal was directed to compel the removal of all obstructions thereon. *Held,* that the city was estopped from opening the streets.

From Linn: REUBEN P. BOISE, Judge.

This is a suit by J. P. Schooling to enjoin the City of Harrisburg, a municipal corporation, from opening alleged highways in what is known as "May and Nixon's Addition" to Harrisburg. The facts are that Samuel May and Samuel Nixon, being the owners of a tract of land described as follows: "Beginning at the northeast corner of the town of Harrisburg, thence south 1 degree east 12.95 chains; thence north 89 degrees east 7.17 chains, to the Oregon and California Railroad; thence north, parallel with said railroad, 12.96 chains, and

thence south 89 degrees west 7.21 chains, to the place of beginning, containing 9.29 acres''—caused it to be surveyed into blocks, lots, streets, and alleys, as such addition, and, on December 27, 1871, acknowledged a plat thereof, which three days thereafter was duly filed for record. This addition contains six blocks, three of which lie on each side of Fifth Street, extending north and south, the blocks on the west side having ten lots each, and the smaller blocks on the east side only four lots each, with alleys extending east and west through the middle of each block, so that the larger contain five, and the smaller only two, lots on each side of the alley. Blocks 1 and 6 are situated at the north end of the addition, and are separated from blocks 2 and 5 by Moore Street, the latter blocks being separated from blocks 3 and 4 by Macy Street, which streets run east and west. Blocks 1 and 6 were surveyed upon land owned by May, and the other blocks upon land owned by Nixon. At the time this addition was platted, the tract was inclosed with a substantial fence, which has been maintained ever since. None of the streets or alleys have ever been opened, except about 150 feet at the west end of Macy Street for private purposes, and, though the proprietors have sold and conveyed lots with reference to the recorded plat, the purchasers thereof have erected their buildings so as to front upon and to be accommodated by Fourth Street, a public highway bordering said addition on the west. After the plat was recorded, Nixon planted shrubbery, fruit trees, and grapevines in Moore Street, and on July 11, 1876, he and his wife, in consideration of $1,400, executed to plaintiff a warranty deed for the north half of blocks 2 and 5 in said addition, and at the same time, in consideration of $1, they also executed to him a quitclaim deed of all their interest in Moore Street, and that part of Fifth Street situated between the parcels so conveyed. Plaintiff, having caused his deeds to be recorded, set out grapevines and fruit trees in, and cultivated and fenced, Moore and Fifth streets, and also erected a shed at the end of his barn, extending across the alley at the south end of his half blocks. The common council of Harrisburg, on April 16, 1901, directed the

marshal to notify all persons closing the streets and alleys in said addition to remove the obstructions within thirty days, whereupon this suit was instituted, plaintiff alleging, *inter alia.* that defendant ought to be estopped from asserting any right in Moore or Fifth streets or in said alley, for that it had, for more than twenty-five years, with knowledge of his claim of ownership in said streets and alley, permitted him to improve the same. The allegations of the complaint having been put in issue by the answer, a trial was had, resulting in a decree as prayed for in the complaint, and defendant appeals.

                                                        Affirmed.

For appellant there was an oral argument by *Mr. H. C. Watson,* with a brief over the names of *H. C. Watson* and *L. L. Swan,* urging these points, among others:

I. A grantor's possession after granting land is presumptively neither adverse nor hostile: 1 Cyc. 1039; *Northern Counties Trust* v. *Enyard,* 24 Wash. 366 (64 Pac. 516); *Steel* v. *City of Portland,* 23 Or. 176 (31 Pac. 479); *Little Rock* v. *Wright,* 58 Ark. 142; *Lee* v. *Mound Station,* 118 Ill. 304 (8 N. E. 759); *Hempstead* v. *Huffman,* 84 Iowa, 398 (51 N. W. 17); *Livermore* v. *Maquoketa,* 35 Iowa, 358; *Matter of Public Park Com'rs,* 53 Hun, 556; *Derby* v. *Alling,* 40 Conn. 410; *Schwallback* v. *Chicago, M. & St. P. Ry. Co.* 69 Wis. 292 (2 Am. St. Rep. 740, 34 N. W. 128).

II. An easement created by deed or grant is not lost by nonuser: *Horner* v. *Stillwell,* 35 N. J. Law, 307; *Eddy* v. *Chace,* 140 Mass. 411 (5 N. E. 306); *Veghte* v. *Raritan Water Power Co.* 19 N. J. Eq. 42; *Smyles* v. *Hastings,* 22 N. Y. 217; *Jewett* v. *Jewett,* 16 N. Y. 150; *White* v. *Crawford,* 10 Mass. 183; *Arnold* v. *Stevens,* 24 Pick. 106 (35 Am. Dec. 305); *Barnes* v. *Lloyd,* 112 Mass. 224; *Day* v. *Walden,* 46 Mich. 583. Also, see notes to *Northern Pac. Ry. Co.* v. *Ely,* in 87 Am. St. Rep. 775.

For respondent there was a brief over the names of *Weatherford & Wyatt* and *George W. Wright,* with an oral argument by *Mr. Wright* and *Mr. J. R. Wyatt.**

*Note.—No synopsis of respondent's brief is given because it was closely followed by the court on the points discussed.          Reporter.

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court:

1. It is contended *in limine* by defendant's counsel that at the time this suit was instituted the title to the streets involved was not in the plaintiff, and hence the court erred in granting the injunction complained of. It is alleged in the complaint that plaintiff is the owner in fee simple of the streets and alleys in dispute herein. The transcript, however, shows that on June 23, 1890, he executed to his wife, Martha R. Schooling, a deed to the north half of blocks 2 and 5 in May and Nixon's Addition to Harrisburg, and also the streets involved in this suit, and that she, on January 10, 1894, reconveyed to him the real property so received, except said streets. Mrs. E. A. Thomas, a witness called by the defendant, testifies that in October, 1881, she called upon plaintiff's wife, saying, "It was during her lifetime." From this statement it is reasonable to infer that Mrs. Schooling is dead, and, though plaintiff may not have been her heir, he is at least a tenant by the courtesy, and has a life estate in and is entitled to the possession of the real property of which she died seised (B. & C. Comp. § 5544), and for this reason he is authorized to maintain this suit to prevent any interference with such right.

2. Considering the case upon its merits, the question presented by this appeal is whether the doctrine of equitable estoppel is applicable to the facts involved. Our statute prescribes a penalty for disposing of, or offering for sale, any lot or lots in a town or city, or in any addition thereto, until the plat thereof has been duly acknowledged and recorded (B. & C. Comp. § 2736), and also contains the following provision: "Every donation or grant to the public, including streets and alleys, or to any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on the plat of the town wherein such donation or grant may have been made, shall be considered to all intents and purposes a general warranty to the said donee or donees, grantee or grantees, for his, her, or their use for the purposes intended by the donor or donors, grantor or grantors, as aforesaid":

B. & C. Comp. 2738. The recording of the plat of said addition and the sale of lots therein by its proprietors constituted a dedication by them to the public of the streets and alleys marked on the plat.

3. The transcript, however, fails to show that the common council of Harrisburg, as the agent of the public, ever accepted the donation, formally or otherwise, until April 16, 1901, when the streets were ordered opened. It is unnecessary to inquire whether or not the dedication, under the circumstances adverted to, was revocable, for, if the plaintiff can successfully invoke the doctrine of an estoppel *in pais,* he is entitled to the relief which the application of that equitable principle affords. In the case at bar, the streets involved have never been opened, and for nearly thirty years prior to the commencement of this suit plaintiff and Nixon, his grantor, have kept the premises inclosed and made valuable improvements thereon. "As a way," says Mr. Justice WOLVERTON, in *Bayard* v. *Standard Oil Co.* 38 Or. 438 (63 Pac. 614), "may be obtained and established by user, it may also be lost to the public by nonuser." In *Baldwin* v. *Trimble,* 85 Md. 396 (37 Atl. 176, 36 L. R. A. 489), it was held by the Court of Appeals of Maryland that an evident and notorious abandonment of a public road and the physical closing thereof, with the knowledge of the municipal authorities, on the faith of which private parties have expended money in improvements, constitute an estoppel against the reassertion of the public easement. In *Orr* v. *O'Brien,* 77 Iowa, 253 (42 N. W. 183, 14 Am. St. Rep. 277), it is held by the Supreme Court of Iowa that the entire nonuser of a highway for a period of ten years, and the actual, open, notorious, and adverse possession thereof by a party for the same length of time, will estop the public from thereafter claiming any right therein against such party or those claiming under him. In *Chicago & N. W. Ry. Co.* v. *People ex rel.* 91 Ill. 251, the authorities of a city having acquiesced for nineteen years in the maintenance of an arch over a public street by a railroad company, and then made a written agreement whereby the right so to use the street was continued until it should be neces-

sary to rebuild the arch, it was held that the city, by these acts of recognition and acquiescence, was estopped from compelling the company to remove it until it should become necessary to rebuild the same.    In *Hamilton* v. *State,* 106 Ind. 361 (7 N. E. 9), a public highway having been maintained for more than twenty years, substantially of uniform width, but less than that at which it was originally laid out and established, and fences built in good faith on the appearance of the way, it was held that the law presumed an abandonment of so much of the highway as was thus occupied, and the public was estopped from asserting its rights by means of criminal prosecutions against adjoining landowners for obstructing the highway by so narrowing it.    In *Paine Lum. Co.* v. *Oshkosh,* 89 Wis. 449 (61 N. W. 1108), a plat of a city, dedicating a street, having been recorded, the common council refused to open it, whereupon the owners of the fee, relying upon such action of the council, filled up the land in and adjoining such street and erected buildings thereon, and it was held that the city was estopped from exercising, as against such owners, the rights acquired by the recorded plat.

The principle announced in the cases to which attention has been called probably had its origin in a remark made by Judge Dillon, and found in his work on Municipal Corporations (3 ed. § 675), in which the learned author, conceding that the statute of limitations may run against a municipal corporation in its private character, says: "But such a corporation does not own and cannot alien public streets or places, and no *laches* on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public.    It will, perhaps, be found that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but, if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are within ordinary limita-

tion statutes.   It is unsafe to recognize such a principle.   But there is no danger in recognizing the principle of an estoppel *in pais* as applicable to such cases, as this leaves the courts to decide the question, not by mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as right and justice may require.'' The language quoted is criticised by the Supreme Court of West Virginia in *Ralston* v. *Weston*, 46 W. Va. 544 (33 S. E. 326, 76 Am. St. Rep. 834), and in a note to the case of *Northern Pac. Ry. Co.* v. *Ely*, 25 Wash. 384 (65 Pac. 555, 54 L. R. A. 526, 87 Am. St. Rep. 766), referring to the principle spoken of by Judge Dillon, it is said: ''Many states have, however, followed Dillon in this regard, and, influenced undoubtedly by the apparent injustice of depriving individuals of property which they have occupied for years, aided by the negligence and *laches* of public officials and of the public courts, have applied the doctrine of equitable estoppel to such cases.'' In the case at bar the officers of the defendant knew that the streets and alley in question were inclosed, and must also have known that plaintiff, for more than twenty-five years, had been making valuable improvements thereon, and, these officers having permitted him to use the property without objection in a manner inconsistent with the assertion of any right thereto on the part of the city, such tacit permission and use evidence an abandonment of the highway by the municipality, which operates to estop it from asserting the right now insisted upon, and, this being so, no error was committed in restraining the opening of such streets and alley, and hence the decree is affirmed.          AFFIRMED.