Decided 31 July, 1906.
## OLIVER v. SYNHORST.
86 Pac. 376.

LOSS OF STREETS BY NONUSER*—ESTOPPEL AGAINST CITY.

Although title to land dedicated as a street cannot be acquired against a city through lapse of time under a statute of limitations, still rights to even a street may become so fixed by neglect to open and use it, that it may be more just to enforce an equitable estoppel against the municipality than to retake the street.

For instance: A street having been dedicated but not opened over rough ground, whereby uncertainty existed as to the lines, and a purchaser in the tract having in good faith placed valuable improvements on part of the street adjoining his lots, which were undisturbed for thirteen years, and the removal of which would appreciably injure the lots, the city ought to be equitably estopped now from claiming that part of the street so improved.

From Union: ROBERT EAKIN, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Anna Oliver against Fred Synhorst, as street

---

*NOTE.—In connection with this case see the following notes:

Rights Acquired as Against the Public by Adverse Possession of a Highway or City Street: 18 L. R. A. 146, 29 Am. St. Rep. 500. Extinguishment of Highways and Other Easements by Operation of the Statute of Limitations: 14 Am. St. Rep. 278; 76 Am. St. Rep. 492. The Right to Acquire Title by Adverse Possession to Lands Held by Municipal or Other Public Corporations and Devoted or Dedicated to a Public Use: 87 Am. St. Rep. 775-782.

As to the Effect of Adverse Possession of Public Property Other Than Streets or Roads, see 76 Am. St. Rep. 479.

Abandonment of a Highway by Non-User or Otherwise Than by the Act of Public Authorities: 26 L. R. A. 449; 14 Am. St. Rep. 281.

Discontinuance or Vacation of a Highway by the Acts of Public Authorities: 26 L. R. A. 821.

The Effect of an Abandonment of a Highway: 26 L. R. A. 659.

The Right to Acquire Title by Adverse Possession to Lands Held by Railway or Other Quasi Public Corporations: 87 Am. St. Rep. 775; 54 L. R. A. 522 (with briefs); 2 L. R. A. (N. S.) 272 (with briefs).

See, also, *Christian* v. *Eugene,* 49 Or. —.

REPORTER.

superintendent of La Grande, to enjoin him from removing or interfering with a fence and sidewalk of the plaintiff along the north side of lots 3, 4 and 5 in block 74 of Chaplin's Addition to La Grande, and from destroying or in any manner interfering with her shade trees, ornamental trees and shrubbery thereon. By the complaint, after the preliminary allegations, it is averred that on July 14, 1884, Daniel Chaplin and C. H. Prescott, trustee, filed in the office of the clerk of Union County and caused to be recorded a plat of Chaplin's Addition to the City of La Grande, upon which was shown a street running east and west along the north side of block 74 and designated as O Street, and the pleader then continues:

"But that the City of La Grande never accepted the donation of said O Street along the north side of said block 74, and said street at said point was closed and by nature impassable until five or six years ago when private individuals made a narrow grade or wagon track up the hill, along and some distance from the north side of said block 74, and the city exercised no right or control over said street until the fall of 1904, when the city council passed a pretended ordinance requiring a sidewalk to be built along the north side of said block 74.

"That in the fall of 1891 one T. D. Remington bought lots 4, 5 and 6 in said block 74, and built a fence around the same, and built a large house on said lot 5, and planted shade trees around said lots, and since said time this plaintiff and her grantors have had said premises inclosed continuously up to where her fence now stands on the north side of lots 4 and 5 on O Street, claiming in good faith to own the same and that the plaintiff is the owner thereof, without any objections from said City of La Grande, and with the knowledge and consent of said city, and about the year 1897 with the knowledge and consent of said City of La Grande this plaintiff at great cost constructed an iron fence along the north side of said lot 5 and along the north end of said lot 5 and along the north end of said lot 4 about 150 feet on said O Street in said City of La Grande, the same being along the same line where plaintiff's grantor constructed said fence in the fall of 1891; and, with the like knowledge and consent of said city, the plaintiff and her grantors hauled earth at great cost and filled in said lot from her said fence to her dwelling house, and improved said lot and ground and made a fine lawn thereon, and planted valuable shade and ornamental trees along said fence, and planted

and propagated a very fine rose garden within said inclosure and next to said fence and made improvements on her said dwelling house at great cost, all of which was done in good faith by this plaintiff and with the knowledge and consent of said City of La Grande many years ago, and without any objections from said city, the plaintiff believing them to be on her own land.

"That several years ago the plaintiff, being the owner of lot 3 in said block 74, the same being on a steep hillside, blasted out and excavated said lot at great expense and constructed a barn thereon and left sufficient room between the barn and the supposed north line of said lot for the convenient use and occupation of said barn, and so that hay and feed could be hauled along said barn and inside of the supposed north line of said lot for delivery in said barn, all of which was done with the full knowledge and consent of said City of La Grande, and without any objections being made by said city, and at great expense to this plaintiff.

"That in about the year 1897 this plaintiff, with the consent of said City of La Grande, and at considerable expense, constructed a substantial sidewalk along the north side of her said lots 4 and 5 and up against her said iron fence the entire length of said lots on what was supposed to be the south side of said O Street, and that said sidewalk is now there in good condition for use, and that subsequently she extended her said sidewalk along the north end of lot 3 and on the south side of O Street, and that the sidewalk so extended is now there in good condition for use as a sidewalk and that no part of said sidewalk is dangerous or in need of repairs.

"That said O Street of said City of La Grande, as platted by said Daniel Chaplin, runs east and west along the north side of plaintiff's said premises, and if any part thereof is inside of plaintiff's said fence such part has never been opened for public use, and has been inclosed and improved by the plaintiff and her grantors with the full knowledge and consent of said City of La Grande, and without any objections being made thereto, ever since the fall of 1891.

"That the said dwelling house of plaintiff is worth not less than $3,000, and the north side of said dwelling house is within about 16 feet of said iron fence above set out, and the whole architectural effect of said dwelling house and premises would be destroyed if said fence were removed seven feet or any other distance south of its present location, and all of the improvements on said premises, including said dwelling house, were made by the plaintiff and her grantors with the full knowledge

of the City of La Grande; that she and her said grantors believed and claimed that the north line of said premises was where said iron fence is now located."

It is then alleged that on December 12, 1904, the defendant, as street superintendent, wrongfully and erroneously claiming that plaintiff's fence and sidewalk were seven feet in the street, notified her to remove the same, and that if she did not do so within 24 hours he was directed by the city to remove it; that if such fence and sidewalk are moved back to what is claimed by defendant to be the street line they would be wholly on plaintiff's property and six or seven feet south of her north line, and her shrubbery and shade trees would be destroyed to her irreparable damage and injury.

"That by reason of the facts above alleged, the defendant as street superintendent of said City of La Grande and his successors in office ought to be and they are estopped and precluded from claiming now or at any time, or proving or alleging that any of the lands included within the plaintiff's said fence are or ever were any part of said O Street, and from asserting or exercising any supposed right to remove the plaintiff's said iron fence or her sidewalk onto her said lands, or in any manner to remove either said fence or said sidewalk from where they are now located or to interfere with them, or either of them, in any way, or to open or widen said O street so as to include within said street any part of the lands which are inclosed within her said fence as aforesaid."

The relief demanded is an injunction restraining the defendant and his successors in office from interfering with the plaintiff's fence and sidewalk, shade trees, shrubbery, etc., and for a decree establishing her north line at the point where such fence is now located. The court below, on motion of defendant, struck out all that portion of the complaint which we have inclosed in quotation marks, and plaintiff declined to amend or plead further.

The defendant answered, setting up that plaintiff's fence and sidewalk were seven feet in the street and was an unlawful obstruction thereto, and that the defendant had been ordered by the city to remove such obstruction. These allegations were denied by the reply. When the case came on for trial the plaintiff declined to offer any testimony, and after hearing that

of the defendant, the court rendered a decree dismissing the complaint, and plaintiff appeals.          REVERSED. .

For appellant there was a brief over the name of *Ramsey & Oliver*, with an oral argument by *Mr. William Marion Ramsey.*

For respondent there was a brief over the names of *F. S. Ivanhoe* and *Charles H Finn*, with an oral argument by *Mr. Finn.*

MR. CHIEF JUSTICE BEAN delivered the opinion. .

The evidence does not accompany the transcript, and the only question for our consideration is whether the court erred in striking out the matter pleaded in the complaint as an estoppel. From these averments it appears, in brief, that Chaplin's Addition to La Grande was laid out and platted in 1884, and O Street thereon dedicated to the public. The street, however, was never opened or improved by the city, and it never assumed authority or control over it until the fall of 1904. In 1891 the plaintiff's grantor bought lots 4, 5 and 6 in block 74, abutting on O Street, and, with the consent and knowledge of the city, built a fence along what he claimed and believed to be the north line of such property, erected a large dwelling house on lot 5 with reference to such supposed line, and planted shade trees and shrubbery and otherwise improved the property for a residence site, claiming in good faith to be the owner of the same. In 1897, after the plaintiff had purchased the property, she constructed an iron fence at the place where the former fence stood, and afterward hauled earth and filled up the lot to such fence, and otherwise improved the property by planting shade and ornamental trees along the fence, making a rose garden inside of the inclosure near the fence, building a sidewalk just outside the fence, and otherwise improving the property at great cost, all of which was done in good faith with the consent and knowledge of the city authorities and under the belief that she owned the property so inclosed. Several years before the commencement of this suit she blasted out and excavated a part of lot 3 at great cost and constructed a barn thereon, leaving sufficient room between it and the supposed street line for a drive-

way.   The plaintiff's dwelling house is within 16 feet of the iron fence and the architectural effect thereof and the beauty and value of her home would be materially impaired if the fence is now removed, and her approach to her barn would be entirely cut off.   The occupancy and improvement of the property as referred to was made by the plaintiff and her grantor under the belief that the true north line is where the iron fence is now located and with the knowledge and consent of the city authorities.   It thus appears that for more than 13 years the plaintiff and her grantor have been in the open, exclusive and peaceable possession of the strip of land now in controversy, and that they have made, without objection from the city authorities, valuable and permanent improvements thereon in good faith, believing that they were the owners thereof.   The question for decision is whether, by reason of these facts, the city is now estopped to assert that the true street line is other than where the plaintiff's fence is located.

There is irreconcilable conflict in the cases as to whether the right of the public to use land dedicated for a street or highway may be extinguished by nonuser or adverse possession, due to the laches, negligence or nonaction of municipal authorities. The weight of the adjudged cases seems to be that since such authorities have no right to sell, alienate or dispose of the highways, except as provided by law, the statute of limitations will not run against them, and such is the rule now in force in this State by a recent statute: Laws 1895, p. 57.   The authorities on the question are so fully collated and commented upon in the notes to *Orr* v. *O'Brien,* 14 Am. St. Rep. 278, and *Northern Pac. Ry. Co.* v. *Ely,* 54 L. R. A. 526, 87 Am. St. Rep. 775, that a mere reference to them is all that is essential in this connection.   But, while the rule may be that the ordinary statute of limitations as such cannot be set up to defeat the right of the public to the use of a street or highway, there may grow up, in consequence of the laches of the public authorities, private rights of more persuasive force in the particular case than that of the public, and if "acts are done by an adjoining proprietor which indicate that he is in good faith claiming as his own

that which is, in fact, a part of the highway, and is expending money on the faith of his claim, by adjusting his property to the highway as he supposes or claims it to be, the public will be estopped:" *Hamilton* v. *State,* 106 Ind. 361 (7 N. E. 9); *Chicago, etc., Ry. Co.* v. *Joliet,* 79 Ill. 25; *County of Piatt* v. *Goodell,* 97 Ill. 84; *Baldwin* v. *Trimble,* 85 Md. 396 (37 Atl. 176, 36 L. R. A. 489); *Paine Lumber Co.* v. *Oshkosh,* 89 Wis. 449 (61 N. W. 1108). Although Mr. Dillon is unwilling to assent to the doctrine that as respects public rights municipal corporations are within the ordinary limitation statutes, he says: "It will, perhaps, be found that cases sometimes arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public; but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments," and that "there is no danger in recognizing the principle of an estoppel *in pais* as applicable to exceptional cases, since this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the cases to hold the public estopped or not, as right and justice may require": 2 Dillon, Mun. Corp. (4 ed.), § 675.

This principle was applied by this court in *Schooling* v. *Harrisburg,* 42 Or. 494 (71 Pac. 605). May and Nixon had laid out an addition to the town of Harrisburg and duly acknowledged and recorded a plat thereof in 1871. At that time the tract of land was inclosed with a fence which was thereafter maintained. None of the streets or alleys shown were opened except a portion if one street, although the proprietors sold lots with reference to the plat. Notwithstanding the making and recording of the plat dedicating the streets and alleys to the public, Nixon continued to occupy and cultivate one of the streets and subsequently sold the lots abutting thereon and conveyed his interest in the street. His grantee occupied and cultivated the street and erected a shed to his barn extending out over an alley. It was held that upon these facts the municipal authorities were estopped from opening the street because of their laches in permitting Nixon and his grantee to improve

the same as a part of their premises. This case is decisive of the one at bar. Indeed, the facts call more strongly in the present case for the application of the doctrine of equitable estoppel than in the Schooling case. In that case Nixon and his grantee knew that the land occupied by them had been dedicated to the public and acted with full knowledge of that fact. Here, on the contrary, the plaintiff and her grantor supposed and believed that the portion of the street occupied by them was a part of their property and was included within the boundaries of their lots. Again, in the Schooling case the opening of the street would not have seriously injured the plaintiff, while here the removal of the fence to what the defendant claims to be the true street line would, according to the allegations of the complaint, practically destroy the plaintiff's property for residence purposes and would work irreparable injury to her. She has, with the knowledge and consent of the city authorities, inclosed a part of the street and improved the same in good faith to such an extent that (if the allegations of the complaint are true) she would be seriously injured and damaged if she is now required to remove her fence and throw open that portion of the street occupied by her to the public, and is therefore entitled to invoke, as against the city, the doctrine of estoppel. The decree of the court below will be reversed, and the cause remanded, with directions to overrule the motion to strike out, and for such further proceedings as may be right and proper.

REVERSED.

Decided 31 July, 1906.