Argued June 6, affirmed August 14, 1951

# CITY OF MOLALLA *v.* COOVER ET UX.
## 235 P. 2d 142

*Wm. M. Stone,* of Oregon City, argued the cause and filed a brief for appellants.

*Clifford S. Beckett,* of Oregon City, argued the cause for respondent. With him on the brief were Butler, Jack & Beckett, of Oregon City.

Before BRAND, Chief Justice, and HAY, LUSK and WARNER, Justices.

BRAND, C. J.

The plaintiff City of Molalla seeks mandatory injunction to compel the defendants to remove obstructions from a public street in the city. It is alleged that defendants have constructed fences and a small outbuilding in the street; that the use of the street is necessary and that the plaintiff has demanded the removal of the obstructions, with which demand defendants have refused to comply. The answer alleges facts on which the defendants predicate a claim of estoppel. The reply is a general denial. After trial, a mandatory injunction issued in accordance with the prayer of the complaint. The defendants appeal. Since the allegations of the answer on which estoppel is predicated are broader than the proof, we will turn directly to the evidence.

The Metzler and Hart Addition to the town of Molalla was dedicated in the year 1913 and the plat thereof was duly recorded in the office of the county clerk of Clackamas county. According to the original plat, Seventh Street, having a width of 50 feet, runs easterly and westerly along the south line of Blocks 12, 13 and 14. The south line of Seventh Street also forms the north boundary of Blocks 16 and 15. Of the three blocks north of and abutting on the north line of Seventh Street, Block 12 is to the west with Block 13 in the center and Block 14 to the east. Of the two blocks abutting on the south line of Seventh Street, Block 16 is to the west and lies south of Blocks 12 and 13. Block 15 is to the east and lies south of Block 14. Hart Avenue, coming from the north, runs southerly between Blocks 12 and 13 and ends at its intersection with Seventh Street. Metzler Avenue, coming from the north, runs southerly between Blocks 13 and 14

and extends across Seventh Street and on to the south between Blocks 16 and 15. The west end of Seventh Street is the west line of Blocks 12 and 16 extended. To the east, Seventh Street intersects Molalla Avenue which runs northerly and southerly along the east lines of Blocks 14 and 15. At that point, Seventh Street ends.

In November 1930, the county court vacated all of the plat lying immediately south of Seventh Street. Metzler Avenue, between Blocks 16 and 15 was vacated. Seventh Street, between Hart and Metzler Avenues, was not vacated. The defendants in 1931, being already in possession under lease, purchased on contract about 31 acres of land lying immediately south of the south line of Seventh Street, being the land which had been thrown into acreage by the vacation of the plat. The contract of purchase described the northerly line of the property thus: "thence Westerly along the Southerly line of 7th street which is the Northerly line of Blocks Fifteen (15) and Sixteen (16) in said addition to the Northwesterly corner of Block Sixteen· (16);" The evidence shows that at the time of the purchase, Seventh Street was wholly unimproved. There was a fence along the north line of Seventh Street and one across Seventh Street apparently at Metzler Avenue, but Seventh Street between Hart and Metzler appeared down to the time of trial to be merely a part of the farm or pasture land which lay immediately to the south. There was nothing on the ground to indicate that it was a dedicated street. In 1937 the defendants also acquired Lot 5 of Block 13 which lies at the southeast corner of that block and thus abuts on Seventh Street and Metzler Avenue. Thus the plaintiff's two tracts of land were separated only by the unimproved and unopened part

of dedicated Seventh Street. Defendants farmed and pastured their property for dairy purposes. After acquiring the vacated tract, the defendants built a fence across Seventh Street at Hart Avenue.

In 1940 the defendants built a barn in Seventh Street south of Lot 5 of Block 13. The defendant Ora Coover testified:

"Q. Has there been a time since 1930 that that portion which is known as Seventh Street has not been fenced by you? A. There has not, that is from Metzler Avenue. That is back down here.

"Q. What are the circumstances under which you erected that barn in question on the place? A. I put that barn here, I thought it was my ground, because I knew part of Seventh Street was closed, and it was closed down here and the fence was across down here, and naturally I thought that is where it was.

"Q. And when did you build the barn? A. 1940.

"Q. How extensive a structure is it? A. Well, I just kept building, it was around twenty-seven feet; concrete floor, concrete walls. The picture of the inside will show it, Grade A.

"Q. Was the barn built for the production of a certain quality of milk? A. For Grade A.

"Q. Has it passed inspection for that purpose? A. Absolutely."

The evidence establishes that the concrete walls extend only part way up from the floor. The defendants discovered their error upon investigating the county records after a dispute with a neighbor whose property lies at the southwest corner of Block 13 with frontage on Hart Avenue which was open for travel, and also on the unimproved portion of Seventh Street.

When the defendants built the barn they received no notice or warning from any city official of the fact

that they were building in the street. The only conversation with any city official relative to Seventh Street was "a couple of years" before the time of trial which occurred in January 1950. We quote:

"Q. Did you ever have any conversation with any of the city officials of Molalla about Seventh Street at the place of your barn, or near there? A. Yes, I did a couple of years ago.

"Q. With whom? A. With the Mayor.

"Q. To what effect? A. Well, the mill over there wanted to put water in, so the City went up there and was going to go down that line there. I told them they could put it in, I thought it was on my property but they could put it in anyway, and the Mayor told me it was a closed street."

■ On 13 September 1949 the city council ordered Seventh Street opened between Metzler and Hart Avenues. The entire transcript of testimony occupies only 18 pages. We have summarized all of the relevant evidence. It is undisputed that Seventh Street was dedicated and was not included in the vacation proceedings. The plaintiff must prevail unless the defendants succeed in establishing their defense of equitable estoppel, as to which they have the burden of proof. The question for decision is not as simple as the cavalier brevity of the briefs and transcript would indicate. The testimony, though brief, indicates that the barn as erected in Seventh Street should be classed as a permanent and valuable improvement, though the fencing should not. *Cruson v. City of Lebanon*, 64 Or. 593, 131 P. 316; *Booth v. Prineville*, 72 Or. 298, 143 P. 994; *Barton v. Portland*, 74 Or. 75, 144 P. 1146. There were no affirmative representations made to the defendants concerning the existence or location of Seventh Street or the erection or maintenance of the barn on

which the defendants could have relied or did rely. The defendants' case rests upon the claim that the city is estopped by reason of its long-continued tacit acquiescence in the occupation and fencing of the street and the erection and maintenance since 1940 of the barn. From an exhaustive note in 171 A.L.R. we quote the following excerpts:

"* * * it has been more generally held or recognized that under some exceptional circumstances a municipality may be estopped to open or use a street or alley theretofore created and still existing in point of law, but never opened, or, if once opened and in use, since fallen into disuse and seemingly abandoned, and it seems fair to say that the weight of authority sustains the possibility of a municipality being estopped in this respect." 171 A.L.R., Estoppel to open or use street, p. 98.

"* * * Thus, there is some disagreement as to whether the conduct of the municipality, to serve as a basis for such an estoppel, must be of an affirmative nature, directly inducing the making of the private improvements on the street, or may consist of mere tacit acquiescence and standing by without objection while one in occupation of an unused street erects valuable improvements thereon." 171 A.L.R., Estoppel to open or use street, p. 108.

"According to one substantial line of authority, an estoppel to open or use a street may arise where there is long-continued nonuser thereof by the municipality, together with possession of the street area by private parties acting in good faith and in the belief that its use or once intended use as a street has been abandoned, and their erection of valuable improvements thereon without objection from the municipality, which has knowledge thereof, and the situation is such that to permit the municipality to reclaim the land would result in great damage to those in possession." 171 A.L.R., Estoppel to open or use street, p. 110.

There is an irreconcilable conflict of authority as to whether an estoppel may be predicated upon tacit acquiescence or only upon affirmative and misleading conduct by the city or its officers. The cases pro and con are compiled in 171 A.L.R., pp. 110 et seq. Oregon is listed as recognizing that an estoppel may be based upon tacit acquiescence.

 It should require no extended citation of authority to establish that a duty rests upon a city to prevent the erection or maintenance of unauthorized permanent and valuable obstructions in dedicated streets, of which obstructions they may have notice. *Bernard v. Willamette Box and Lumber Co.,* 64 Or. 223, 129 P. 1039; *City of Eugene v. Garrett,* 87 Or. 435, 169 P. 649, 170 P. 731. Such obstructions constitute public nuisances. *Moore v. Fowler,* 58 Or. 292, 114 P. 472. It is equally apparent that a city is chargeable with knowledge of the location of its platted and dedicated streets and of the existence of notorious long-continued and permanent and valuable structures therein. Such a duty must be especially clear if it be the law that an estoppel to improve a street may arise against the city by reason of its tacit acquiescence in the maintenance of such obstructions.

The early decisions in this state must be read in the light of the early statutes under which the title of public corporations might be lost by adverse possession. Hill's Annotated Laws, Section 13. Under that statute "the sovereignty subjected itself to the rules applicable to individuals." *Silverton v. Brown,* 63 Or. 418, 128 P. 45. By a statute of 23 February 1895 it was provided that:

"The right of cities and towns (whether incorporated or not) within the state of Oregon, to land

dedicated to or otherwise acquired for the public use for streets, highways, parks or public places, shall not be extinguished by any adverse possession however long continued * * *.'' Laws of Oregon, 1895, p. 57.

In the year 1903 this Court decided *Schooling v. Harrisburg*, 42 Or. 494, 71 P. 605. The plaintiff brought suit to enjoin the city from opening a certain highway which had been dedicated by the filing of a plat in 1871 and by the sale of lots with reference thereto. At the time of dedication the tract was enclosed in a substantial fence which was maintained at all times thereafter. None of the streets or alleys in controversy were ever opened. The dedicator, after filing the plat, planted fruit trees and grape vines in the street. In 1876 he conveyed to the plaintiff by warranty deed, portions of two blocks and by quitclaim deed, all of his interest in the portions of the streets in controversy. Plaintiff set out fruit trees and grape vines and cultivated and fenced the streets and erected a shed across the alley. In 1901 the city directed the removal of all obstructions. The plaintiff alleged that the defendant ought to be estopped from asserting any rights in the streets and alley ''for that it had, for more than twenty-five years, with knowledge of his claim of ownership in said streets and alley, permitted him to improve the same.'' The plaintiff prevailed and this Court affirmed. The Court cited Dillon on Municipal Corporations to the effect that as respects public rights, municipal corporations are not within ordinary statutes of limitation. From the same authority it quoted with approval as follows:

'' '* * * But there is no danger in recognizing the principle of an estoppel in pais as applicable to such cases, as this leaves the courts to decide

the question, not by mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as rights and justice may require.' "

This Court then said:

" ' * * * In the case at bar the officers of the defendant knew that the streets and alley in question were inclosed, and must also have known that plaintiff, for more than twenty-five years, had been making valuable improvements thereon, and, these officers having permitted him to use the property without objection in a manner inconsistent with the assertion of any right thereto on the part of the city, such tacit permission and use evidence an abandonment of the highway by the municipality, which operates to estop it from asserting the right now insisted upon, and, this being so, no error was committed in restraining the opening of such streets and alley, and hence the decree is affirmed.' "

■ The decision rests squarely upon estoppel by tacit acquiescence and not upon adverse possession. There is no indication of any affirmative conduct by the city on which estoppel could be based. Two circumstances have been thought to weaken the force of this decision: First, it was said that the transcript fails to show that the common council ever accepted the donation of the streets, formally or otherwise, and, second, that the plaintiff held under color of title under the quitclaim deed. As to point one, this court has held, however, that an irrevocable dedication results from the filing of a plat and the sale of lots with reference thereto and that the purchase of such lots constitutes a sufficient acceptance by the public and no acceptance or user by the public at large is required. *Spencer v. Peterson,* 41 Or. 257, 68 P. 519, 1108; *Christian v. Eugene,* 49 Or. 170, 89 P. 419; *Silverton v. Brown,* supra; *Nicholas v.*

*Title & Trust Co.,* 79 Or. 226, 154 P. 391. As to point two, it has been directly held in one jurisdiction and recognized here that "occupancy under claim of right will suffice and it is not essential to an estoppel that an occupation be under color of title." *Christopherson v. Forest City,* 178 Iowa 893, 160 N.W. 691.

*Oliver v. Synhorst,* 48 Or. 292, 86 P. 376 was decided on the pleadings. As in the Schooling case, the plaintiff asserted an estoppel against the city. The trial court struck the allegations on which estoppel was predicated and the plaintiff appealed. In this Court the plea of estoppel was held good and the cause was remanded for trial. The Court said:

"* * * But, while the rule may be that the ordinary statute of limitations as such cannot be set up to defeat the right of the public to the use of a street or highway, there may grow up, in consequence of the *laches of the public authorities,* private rights of more persuasive force in the particular case than that of the public, and if 'acts are done by an adjoining proprietor which indicate that he is in good faith claiming as his own that which is, in fact, a part of the highway, and is expending money on the faith of his claim, by adjusting his property to the highway as he supposes or claims it to be, the public will be estopped' * * *." (Italics ours.)

Concerning the Schooling case the Court said:

"* * * This case is decisive of the one at bar. Indeed, the facts call more strongly in the present case for the application of the doctrine of equitable estoppel than in the Schooling case. In that case Nixon and his grantee knew that the land occupied by them had been dedicated to the public and acted with full knowledge of that fact. Here, on the contrary, the plaintiff and her grantor sup-

posed and believed that the portion of the street occupied by them was a part of their property and was included within the boundaries of their lots."

The approval of the Schooling decision and the reference to the "laches of the public authorities" support the view that estoppel may result from tacit acquiescence, but in the Synhorst case the pleadings alleged that the improvements were made with the knowledge "and consent" of the city. After trial on the merits, *Oliver v. Synhorst* was again before this Court. 58 Or. 582, 109 P. 762, 115 P. 594. It was first announced that the law, having been declared on the first appeal "has become the law of this case." As to the facts, the Court said that the evidence failed to show that the plaintiff had taken any measures to ascertain the location of the street lines or that the plaintiff believed her improvements to have been on the lots which she purchased.

"* * * In other words, being uncertain as to the exact line, he was willing to take the chance of an improvement being made in the future. This comes far from the good faith required in these cases to constitute ground upon which to predicate an estoppel."

The Court also said:

"* * * To require a city to open and improve all its streets at once, without reference to the need of such improvement, at the peril of forfeiting them, would be absurd, as a matter of public policy * * *."

■ The last quoted comment was, we think, without significance. Of course, the city need not open and improve all dedicated streets, but the question is not whether a city may forfeit a street by failure to improve it. The question is whether forfeiture may result

from failure to perform its duty to prevent or remove permanent obstructions. The Court held further that there was nothing in the fact that the council visited the property and made no objection to the location of plaintiff's improvements. It was also considered immaterial that the mayor had stated that there could be no objection to the fencing of the street. The Court said:

> "* * * The mayor cannot vacate a street by the most solemn act of authority, much less by a mere casual expression of opinion. * * *"

■ On rehearing, the Court pointed out that a dedicator by sale, with reference to a plat, is bound thereby. The Court then said:

> "In good reason a person acquiring property with reference to such a plat is equally bound by the plat with reference to the streets and alleys marked out. * * *"

The Court held that there was no evidence of any affirmative action by the city. It pointed out that the commonest kind of observation would have shown the plaintiff that her enclosure was encroaching on the street and added:

> "* * * The plaintiff is presumed to know what, with ordinary care, she might have discovered by searching the records or causing a survey to be made. * * *"

The Court attempted to distinguish *Schooling v. Harrisburg* by pointing out that in the latter case, plaintiff had color of title. Plaintiff's claim of estoppel was again rejected.

Notwithstanding its announced acceptance of the ruling in the first case, the second decision in *Oliver v. Synhorst* would appear to have weakened the au-

thority of the cases previously reviewed. Strangely, however, since the second Synhorst case, this Court in *Portland v. Inman-Poulsen Lumber Co.*, 66 Or. 86, 133 P. 829, said:

"* * * This case comes fairly within the rule laid down in Schooling v. Harrisburg, 42 Or. 494 (71 Pac. 605, 9 Mun. Corp. Cas. 705); Oliver v. Synhorst, 48 Or. 292 (86 Pac. 376, 7 L.R.A. (N.S.) 243). It is contended that the final decision of the case last cited, reported in 58 Or. 582 (109 Pac. 762, 115 Pac. 594), overrules to some extent our previous holdings upon this subject; but such is not the case. We expressly recognized the previous ruling of this court, but declared that upon the facts disclosed upon the final hearing of that case plaintiff had not brought herself within them. * * *""

Again, in *Nicholas v. Title & Trust Co.*, supra, the Court, relying on *Schooling v. Harrisburg*, said:

"The grantees of the dedicator may extinguish the right of the public in and to a street by an unlawful encroachment thereon for a term equal to the period of the statute of limitations, which purpresture raises an estoppel against the municipality on the ground of the negligence of its officers in failing to assert a right to the easement * * *."

Once more, in *Barton v. Portland*, supra, 74 Or. 75, 144 P. 1146, the Court approved the doctrine of estoppel by acquiescence in the following words:

"* * * The rule has been followed in this state that the ordinary statute of limitations has no application as respects the public rights of a municipal corporation, but that by the laches of its officers in failing properly to guard such rights the principle of equitable estoppel may be invoked by a private party, not dependent upon the mere lapse of time, but upon all the circumstances of the case * * *"

Finally, in *Dabney v. City of Portland,* 124 Or. 54, 263 P. 386, the Court cited *Schooling v. Harrisburg* and said:

"Where there has been long-continued nonuser by a municipality and valuable and permanent improvements have been made with its consent *or acquiescence,* in good faith, equity will not permit the city to change its position to the material damage of the person thus misled. The groundwork of equitable estoppel is a species of fraud. The conduct of the city must have been such as to have caused the plaintiff reasonably to believe that it was the intention to abandon this strip of land for street purposes. Plaintiff must have been misled to her prejudice, and the damage sustained must be of a substantial character thus to invoke the aid of equity. * * *" (Italics ours.)

The Schooling case has also been cited with approval in *Silverton v. Brown* and *Booth v. Prineville,* both supra. To this notable extent the possibility of estoppel by tacit acquiescence, or, what is the same thing, by laches of the officers of a city, has been affirmed in Oregon. The actual decisions, however, are by no means as persuasive as the words employed. The first opinion in *Oliver v. Synhorst* was based on alleged consent of the city. In *Portland v. Inman-Poulsen Lumber Co.,* supra, the city established street grades on the streets around the area in controversy, but none on the alleged streets on which the defendant erected improvements of very great value. The defendants were encouraged by the mayor and city council to locate their mill on the premises; they notified the city of intention so to build:

"* * * and requested that if said city claimed any interest or right in said premises or any portion thereof, or for the use of the public as a street

or otherwise, that the same should be vacated, and he was informed by the said mayor that the said City of East Portland did not and would not claim any of said premises as a public street or highway, except that the city claimed Fifth Street, now Grand Avenue, as a public street. * * *''

After acquiring legal advice, the defendants constructed their mill. This Court held that the city was estopped. It was a clear case of affirmative action relied upon in good faith. In *Silverton v. Brown* there was evidence of adverse possession for the statutory period prior to the enactment in 1895 which exempted the city from the operation of the statute of limitations. In *Booth v. Prineville, Barton v. Portland,* and *Nicholas v. Title & Trust Co.,* all supra, the approval of the ruling in *Schooling v. Harrisburg* was mere dictum. In *Dabney v. Portland,* although this Court said that estoppel might arise from acquiescence, it was at pains to point out that there were affirmative acts by the city ''whereby a person might reasonably reach the conclusion that the property had been abandoned for public use.'' In *Hart v. City of Independence,* 84 Or. 194, 164 P. 719, the statement that the city was estopped was unnecessary to the decision of the case. The Court also pointed out that it was not, as in earlier cases, a simple matter for the plaintiff to have ascertained the true boundary lines of the street. It indicated that the exercise of reasonable diligence might not have discovered the true boundaries.

It must be conceded that estoppel, based on tacit acquiescence of one having affirmative duty to act, is not unknown in other fields of the law. *First National Bank of Portland v. Stretcher et al.,* 169 Or. 532, 129 P. 2d 830, and cases cited. On the other hand, when a city

which had constructed an unauthorized sewer on the plaintiff's land claimed that he should be estopped by his passive acquiescence, this Court said:

> "* * * Mere silence, or, in the language of previous judicial opinions, 'passive acquiescence,' does not by itself create an irrevocable license or produce an estoppel: * * *" *Fraser v. Portland,* 81 Or. 92, 158 P. 514.

■ It would seem that a governmental body should be, in general, as immune from estoppel as a private litigant.

As against the holdings that the city may be estopped by passive acquiescence, we find persuasive authority and sound reasons for the severe restriction of the doctrine. In *Portland v. Miller,* 72 Or. 317, 143 P. 1006, the city sued to enjoin the maintenance of a dwelling house in the street. The Court cited the second opinion in *Oliver v. Synhorst* and said:

> "The city is not estopped by reason of its failure to eject the defendants at an earlier date.
> "* * * * * *
> "While this addition continued to be thinly populated, there was probably no occasion to use the street in question; and now that occasion has arisen for its use, citizens who bought and built upon the faith of the plat should not lose their right to use the street because the city authorities did not open it before such occasion arose. * * *"

In a suit to restrain the defendant from obstructing a street, the Court rejected the defendant's plea of estoppel and said:

> "* * * Defendant knew that there was a question as to the location of the street line; talked about it with the chairman of the street commission before he had done more than lay the foundation

of the building. He had sufficient knowledge to put him on inquiry, and what he did thereafter he did at his peril. * * *" *City of Newberg v. Kienle,* 60 Or. 486, 120 P. 3.

The Court also observed that the defendant had not been induced to make an expenditure "by any acts of the city". In *Cruson v. City of Lebanon,* supra, 64 Or. 593, 131 P. 316, the plaintiff, relying upon the Schooling case and upon the doctrine of estoppel, sought to enjoin the city from opening an alley. Here again the Court recognized the possibility of estoppel by acquiescence, but it emphasized that there must also be "belief in good faith on the part of the claimant that the street has been abandoned by the public", and reliance "on the faith of that belief".

*Lowell et al. v. Pendleton Auto Co.,* 123 Or. 383, 261 P. 415, was a suit by a property owner to restrain defendant from carrying on the business of storing and repairing automobiles in a public street. The defendant pleaded long-continued use and laches on the part of the plaintiffs. The Court said:

> "It is well established that the doctrine of laches is inapplicable to public rights. As was said by Lord Ellensborough, in Rex v. Cross, supra: 'It is immaterial how long the practice may have prevailed, for no length of time will legitimate a nuisance.' "

In *City of Eugene v. Garrett,* supra, 87 Or. 435, 169 P. 649, 170 P. 731, a street had been dedicated to the width of 90 feet. Defendants asserted that the city was estopped to claim a greater width than 70 feet. The Court said:

> "* * * Most of the lot owners who made improvements on the west side of the street knew that no portion of the 90 foot street had ever been va-

cated. All of them could with reasonable diligence have obtained such information. This is shown and recognized by their petition to the city council to vacate a portion of the street and establish the same seventy feet wide, as proposed by the ordinance which was vetoed by the mayor. \* \* \*''

■ The entire doctrine of equitable estoppel as applied to governmental bodies, and in cases of the type now under consideration, is anomalous. In so far as it has been held that estoppel may arise from affirmative action by a city or its officers, the rule is at logger heads with the principle " 'well established that a public or governmental corporation like a municipal corporation is not estopped by the acts of its officers when they exceed their powers. The rule is that persons dealing with such officers must, at their peril, ascertain the scope of their authority.' '' *Tuttle v. Beem,* 144 Or. 145, 157, 24 P. 2d 12.

"It has been held that no estoppel can arise from an act of a municipal corporation or its officers when done in violation of, or without authority of law, even when money has been expended on the faith of the supposed license: \* \* \*'' *Mutual Irrigation Co. v. Baker City,* 58 Or. 306, 110 P. 392, 113 P. 9.

Again in *Cabell et al. v. Cottage Grove et al.,* 170 Or. 256, 284, 130 P. 2d 1013, this Court said:

"It remains only to say that since, as we have seen, it is beyond the powers of the City of Cottage Grove to close any of its streets, it is equally beyond its powers to authorize another to do so; and, consequently, the city is not estopped by its consent to the improvement and its subsequent repudiation of that consent to object to the commission's unauthorized acts. \* \* \*''

And in *Public Market Co. of Portland v. City of Portland et al.,* 171 Or. 522, 593, 130 P. 2d 624, 138 P. 2d 916, we said:

"* * * A municipal corporation is not estopped by the acts of its officers when they exceed their powers. The rule is that persons dealing with such officers must, at their peril, ascertain the scope of their authority."

We have seen that a city has no legal right to surrender its platted streets to private persons, but on the contrary has a duty to remove public nuisances therefrom. If then, equitable estoppel, based on affirmative action by the city, runs counter to the rule of the cases last above cited, the conflict must be even greater when estoppel is predicated upon acquiescence, i. e., the laches of its officers. We have repeatedly held that estoppels in pais against a state will not arise from the laches of its officers. *School District 47 v. U. S. Nat'l Bank of Portland,* 187 Or. 360, 211 P. 2d 723; *Rohde v. State Industrial Accident Commission,* 108 Or. 426, 217 P. 627; *Oregon v. Portland Gen. Elec. Co.,* 52 Or. 502, 95 P. 722, 98 P. 160; *Lowell et al. v. Pendleton Auto Co.,* supra. It is because of these conflicts that the courts have frequently cautioned that the doctrine of equitable estoppel should be applied in street cases only in exceptional instances of extraordinry hardship.

The doctrine of *Schooling v. Harrisburg* is a product of the pioneer era. It is ill-adapted to the needs of progressive and growing cities. In so far as that case and the dicta which have approved it stand for the proposition that a city will be estopped to open a street by reason of its tacit acquiescence in the construction therein of permanent and valuable improvements by

persons who knew or should have known that the erections were within the lines of dedicated though unopened streets, it and they are overruled. The plaintiff in the Schooling case knew that his improvements were in the street. The fact that he took a quitclaim deed to property which his grantor could not convey might have given color of title but did not give color of equity. In the case at bar the defendant knew that Seventh Street had been dedicated and in any event he was chargeable with such knowledge. He knew that in certain parts of the platted property, streets had been vacated. When his right to occupy Seventh Street was challenged, he was able to, and did ascertain with certainty from the county records that Seventh Street had not been vacated. From the time of the vacation proceedings in the county court, the defendant was chargeable with the knowledge which he could have obtained had he exercised reasonable diligence. While he may have been honest in his belief that Seventh Street had been vacated, he is in no position to claim an estoppel against the city. If the city had a duty to prevent and remove purprestures, the defendant also had a duty not to construct or maintain them. Here the equities are not equal. The public interest must prevail. Our decision is limited to the facts of the pending case. Whether estoppel may in exceptional cases be predicated upon affirmative action by a city or its officers need not be and is not here decided. The decree of the Circuit Court is affirmed. The period of six months within which the defendant must remove the obstructions will commence to run from the date of the mandate in this case. Neither party will recover costs or disbursements.