Argued September 13; reversed September 26; rehearing denied
October 26, 1939

# WOODWARD v. SCHOOL DISTRICT NO. 73, MARION COUNTY

(94 P. (2d) 136)

Department 2.

*John H. Carson* and *Guy O. Smith*, both of Salem, for appellant.

*Custer E. Ross* and *Asa L. Lewelling*, both of Salem, for respondent.

LUSK, J.   Under date of January 15, 1932, the defendant School District No. 73, Marion county, Oregon, issued and delivered to six school teachers six warrants for salary, in varying amounts, totaling $705. The warrants were payable at the State Bank of Scotts Mills, and, after having been received by the respective payees, were by them endorsed in blank, presented at the bank on January 16 and paid.   On the same day the school district's account with the bank was charged

with amounts corresponding to the amounts of the several warrants, and the balance to the district's credit shown on the ledger sheet as of January 14, to wit, $1,145.49 was reduced, by the exact total of the warrants, to the sum of $440.49. On February 11, 1932, the school district issued its warrant in the sum of $120 for teacher's salary, the payee endorsed it in blank, and on February 13 presented it at the bank, which paid it and entered on the bank's account a charge in the amount of $120. None of these warrants was marked paid by the bank, but they were all filed on a spindle at the time they were received and later placed in the "investment vaults", and there kept until February 18, 1932.

On that day F. M. Woodward, the plaintiff, an elderly man, came to the bank, in which he was a depositor, saw J. O. Dixon, the cashier, and informed Dixon that he wished to invest $1,000 in a government bond. Dixon told him that he had about $1,000 in school warrants which were a safe investment and drew a higher rate of interest than government bonds, and the plaintiff thereupon bought the seven warrants hereinabove described, giving Dixon his check for $934.36, the amount of the face of the warrants plus $4.36 interest. At the time that the warrants were delivered to the plaintiff there was a small hole near the center of each of them made by the spindle on which they had been filed. Each of them bore on its margin the endorsement of H. S. Dixon, the clerk of the school district, "presented but not paid for want of funds". On each of the six warrants issued January 15 the marginal endorsement bore that date, while the like endorsement on the warrant issued February 11 appears to have been made on February 13. H. S. Dixon,

the clerk of the school district, was a brother of J. O. Dixon, and assistant cashier of the State Bank of Scotts Mills. As to whether he was present in the bank at the time of the transaction with the plaintiff the testimony is inconclusive.

At this time the bank was in a precarious condition. In May, 1932, it was closed for liquidation.

1. The school district having refused to pay the amount of the warrants to the plaintiff, this action was brought. The defendant, in its answer, pleaded that the warrants had been paid by the school district before they were purchased by the plaintiff. The circuit court found that the warrants had not been so paid. The school district contends on this appeal that there is substantial evidence that the warrants were paid out of its funds on deposit with the State Bank of Scotts Mills, and that there is no evidence to the contrary. If this contention is supported by the record, then the defendant must prevail, because the warrants are not negotiable instruments and are open to all defenses in the hands of *bona fide* holders available as between the original parties: *Goldsmith v. Baker City*, 31 Or. 249, 252, 49 P. 973; *Smith v. Polk County*, 57 Or. 551, 556, 112 P. 715; *Clatskanie State Bank v. Rainier*, 72 Or. 243, 246, 143 P. 909; *Morris v. City of Sheridan*, 86 Or. 224, 236, 167 P. 593.

2. We think that all the evidence in the case on the question demonstrates that the warrants were paid out of the school district's funds. In the dealings between the bank and the school district, it was the practice of the bank to purchase warrants issued by the former when there were not sufficient funds in the account of the district to pay them; otherwise, to pay them out of the district's account. When paid they were treated

in the same manner as checks, that is, they were filed on the "paid" spindle and, at the close of the day's business, were stamped by means of a perforating machine with the word "paid" and the date of payment, and the amounts were entered on the ledger sheet as charges or withdrawals against the district's account. All these things were done with the warrants sued upon except that they were not stamped paid. The only witnesses in the case who could have known whether the warrants were paid or not were the two Dixons. Neither testified that the warrants were purchased by bank; on the contrary, J. O. Dixon stated that "the reason why the warrants were not marked paid was a lot of cussedness going on to keep the bank a going concern;" and explained this statement by saying: "I mean this: That there were numerous and detailed transactions within the bank to keep its accounts in apparent better order than would—that were necessary to make a better report to the banking department." He was then asked by counsel for the plaintiff: "In other words, you wanted to keep the bank examiner satisfied?" And answered: "I am afraid that was it." And H. S. Dixon, while professing a bad memory about the transaction, testified, when questioned as to whether he had told the county school superintendent that the warrants had been paid by the school district: "I would have known that by that time."

■ The plaintiff argues that "a charge-up of a sum of money to a bank account is surely no proof of the payment of a particular warrant or warrants." That might be true under some circumstances, but, where it is shown that there were no other warrants of like amounts outstanding, the identity of the warrants with the charges is sufficiently established. And that is the

case here. Warrants in the amounts of those in controversy were issued to the same school teachers in the month of December, 1931, and the last of these was cashed at the State Bank of Scotts Mills on December 19, 1931. No other warrants in like amounts were issued until those cashed on January 16, 1932, which are the subject-matter of this suit. A similar situation exists as to the warrant for $120 cashed February 13, 1932. No reasonable doubt can exist that the charges in the ledger sheet on which the defendant relies record payment out of the school district's funds of the warrants on which the plaintiff sues.

■ The plaintiff can derive no benefit from the marginal endorsement on the warrants "Presented but not paid for want of funds." Strong circumstances suggest that these endorsements were signed by the clerk after the warrants were paid, because it is in evidence that other warrants, issued in February, 1932, charged against the district's account, and having the tell-tale spindle hole, were not so endorsed. H. S. Dixon testified that the endorsements indicated "that in the manner we handled warrants there, that if there were not funds in the bank to take care of the warrant, then it could be held by the bank," and explained that the warrants could bear such an endorsement even though they were charged against the account "in case the school district did not expect to be able to take care of them, and then, if there was money enough there, they would probably have been charged right up to the amount in the bank." Furthermore, the uncontradicted evidence is, that the bank purchased or "carried" the warrants only when there were not sufficient funds in the school district's account to pay them. In view of the facts that there were ample funds for that purpose

at the time these warrants were presented, that they were in fact charged to the district's account, and that the reason they were not marked "paid", as explained by J. O. Dixon, was to serve the bank's unlawful purposes, the endorsement "Presented but not paid for want of funds", is a manifest falsehood.

Our attention is called to §§ 56-2304 and 56-2305, Oregon Code 1930, which read as follows:

§ 56-2304. "No warrant or certificate of indebtedness issued by this state, or warrant issued by any county, city, school district, irrigation district, drainage district, port district or other municipality or political subdivision of this state shall be paid unless such warrant or certificate of indebtedness itself is surrendered and delivered to the officers by whom payment may be made, contemporaneously with or prior to the payment; provided, however, that if one claiming to be the lawful owner of any such warrant or certificate of indebtedness shall satisfy the officers by whom payment is to be made that such warrant or certificate of indebtedness has been lost, stolen or destroyed prior to his having received value therefor, and shall thereupon furnish a bond for double the amount of the warrant or certificate of indebtedness, with two or more sureties, qualified as in the case of sureties for bail, which sureties shall protect the issuing body, the officer making the payment and/or the rightful owner of the warrant or certificate of indebtedness to be paid, against any loss, or expenses, including interest, or other damage or liability resulting from such payment, then such warrant or certificate of indebtedness may be paid without its surrender or delivery; provided, that surety bonds, with like penalties, of companies duly licensed to transact surety business in the state of Oregon may be accepted for the face amount of such lost, stolen or destroyed warrant certificate of indebtedness."

§ 56-2305. "When any warrant or certificate of indebtedness is paid, other than as provided for in this

act, such payment shall not relieve the political body issuing the warrant or certificate of indebtedness from liability to the true and lawful owner thereof; provided, however, that the officer or person who assumes to make payment of the warrant or certificate of indebtedness, other than as provided for herein, and his sureties on his official bond, if any, shall be personally responsible to the state, or particular subdivision represented by him in attempting such payment, for the full amount of loss occasioned by such wrongful payment.''

■ The former section is obviously for the protection of the state, school district or other political subdivision; the latter, for the protection of the ''true and lawful owner'' of the warrant in cases where the procedure prescribed in § 56-2304 is ignored. Their provisions cannot be invoked by one who, as the plaintiff here, bought warrants which the school district had already paid.

■ The reply contains a plea of ratification based on the alleged fact that the defendant filed a claim with the surety on the clerk's bond for reimbursement on account of the loss sustained by it in this transaction. Whether this is a good plea need not be determined, since the evidence does not support it. The school district filed a claim, not for pecuniary loss, but for the return of the warrants in order to complete its report to the County School Superintendent of Marion county. The surety company tendered to the school district a draft for the amount of the warrants and interest, which the school district refused to accept. Hence there was no ratification of the clerk's conduct.

■ The whole of the evidence tends to show beyond serious controversy that the cashier of this failing bank, with the connivance of his brother, the school district clerk and assistant cashier of the bank, retained these

warrants after they had been paid from the school district's funds as apparent assets, in order to deceive the state's banking authorities, and then, when the opportunity presented itself, foisted them on an unsuspecting depositor as valid obligations of the school district. The result is unfortunate for the plaintiff, who was entirely innocent in the matter, and has been outrageously defrauded. But there is no reason, in law or justice, why the school district should be required to pay the warrants a second time.

There being no competent evidence in the record to support the findings, the judgment of the circuit court is reversed and the cause remanded with directions to enter judgment for the defendant.

RAND, C. J., and ROSSMAN and BAILEY, JJ., concur.