Argued September 29; affirmed November 15, 1949

# SCHOOL DISTRICT 47 *v.* UNITED STATES NATIONAL BANK OF PORTLAND

211 P. 2d 723

362

*Wilber Henderson* argued the cause for appellant. On the brief were Platt, Henderson, Warner, Cram & Dickinson, and John E. Huisman, all of Portland.

*Earl F. Bernard* argued the cause for respondent. On the brief were Collier & Bernard and William F. Bernard, all of Portland, and John L. Foote, of St. Helens.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY, HAY, and PAGE, Justices.

BAILEY, J.

This action was brought by plaintiff, School District 47 Joint, Columbia County, Oregon, against defendant, The United States National Bank of Portland (Oregon), a corporation, to recover $34,953.50 alleged to have been wrongfully paid by defendant from funds of plaintiff on 116 instruments, referred to by plaintiff as "warrants" and by defendant as "checks", fraudulently issued by Lee Schwab, clerk of plaintiff school district. From a judgment for $34,848.94, rep-

resenting the aggregate amount of 114 of such instruments, in favor of plaintiff, defendant has appealed.

The complaint alleges that, during all the times therein mentioned, plaintiff was and now is a duly organized and existing school district of Columbia County, Oregon, and that Lee Schwab was, during the times therein mentioned, the clerk of such district; that defendant was and now is a corporation organized under the National Banking Act of the United States of America; that, during all the times mentioned in the complaint, plaintiff "had money on deposit with the defendant in Columbia County, Oregon, in its commercial department"; that between August 1, 1945, and July 24, 1946, said Lee Schwab, without the authority or consent of plaintiff and without any consideration to plaintiff, issued 116 instruments, each purporting to be a school warrant of the plaintiff district; and that on many of such pretended warrants Lee Schwab, without the authority or consent of plaintiff, fraudulently forged the signature of the chairman of the board of school directors of plaintiff district and without the authority or consent of plaintiff "fraudulently signed, forged and endorsed the name of each payee in the pretended warrants and secured the amount thereof and thereby embezzled the sum of $34,953.50."

It is further alleged that between August 1, 1945, and July 24, 1946, the defendant, without the authority or consent of plaintiff, paid the amount of such pretended warrants, to wit, $34,953.50, out of the funds which plaintiff had on deposit with defendant, and that "at the time defendant paid such pretended warrants the defendant knew or in the exercise of reasonable care should have known that the pretended warrants

were not valid warrants or valid obligations of the plaintiff.''

Defendant, in its answer, admits that the school district and the bank were duly organized; that Lee Schwab was the clerk of plaintiff district; and that during all the times mentioned the school district had money on deposit in the commercial department of the defendant bank. Defendant denies all the other allegations of the complaint and alleges that, during the times therein mentioned, Lee Schwab was ''the duly appointed, qualified and acting clerk of the plaintiff school district between the first day of August, 1945, and the 24th day of July, 1946, and as such was the duly constituted custodian of all funds belonging to the plaintiff school district'', and that ''all money paid from the checking or commercial account of plaintiff maintained with the defendant were upon checks signed by the officers of defendant duly authorized to sign such checks.''

In its affirmative answer defendant alleges that, during all the times therein mentioned, plaintiff school district was and now is a duly organized school district of the second class; that between August 1, 1945, and July 24, 1946, one Lee Schwab was the duly appointed, qualified and acting school clerk of that district; that defendant has ever since on or about July 29, 1933, maintained and operated a branch bank at St. Helens, Columbia County, Oregon, under the name of The United States National Bank of Portland (Oregon), St. Helens Branch; and

> ''that as an incident to said banking operation, the defendant has heretofore and now does operate and maintain a department commonly referred to as the Commercial Accounts Department, in which

said Department persons may deposit funds subject to withdrawal only on checks bearing a signature or signatures certified to the defendant by the depositor; that as an incident to the operating of the aforesaid commercial or checking account, the defendant at the conclusion of every calendar month makes up a statement showing all deposits to and withdrawals from each account and said monthly statement, together with the vouchers or canceled checks representing the withdrawals from each account for the past month, are available for delivery to the depositor.''

The foregoing allegations are contained in paragraphs I and II of defendant's affirmative answer. It is therein further alleged that since the establishment of the St. Helens Branch Bank, to wit, July 29, 1933, plaintiff has maintained a commercial or checking account with the defendant at said branch; that during such period plaintiff has from time to time certified to defendant the names of the officers authorized to sign checks upon said account; that said officers from time to time during said period ''have drawn their checks in the same form and substance'' as those theretofore referred to; that ''said checks have been received, passed and acted upon in the regular channel of bank paper as are all checks''; that plaintiff ''through such means and medium paid and discharged'' the accruing obligations for teachers' pay and all other expenses and charges against it; and that during the time from August 4, 1945, to July 24, 1946, plaintiff had authorized it to honor checks upon plaintiff's account signed by any two of the following, to wit: Glen F. Hawkins, Lee Schwab and T. F. Keasey.

It is further alleged that at various times between October 25, 1945, and July 5, 1946, defendant delivered to plaintiff the monthly statements and canceled checks

or vouchers for the months of July, 1945, to and including June, 1946; that such canceled checks or vouchers evidenced withdrawals in the sum of $105,-489.50 from the checking or commercial account; and that on August 22, 1946, defendant delivered to plaintiff the monthly statement and canceled checks for the month of July, 1946, and to the 22nd day of August, 1946, aggregating $6,244.45 in withdrawals from such account. It is then averred that § 40-1009, O. C. L. A., provides that no bank, which has paid and charged to the account of a depositor a forged check issued in the name of such depositor, shall be liable to such depositor unless within 30 days after the return to said depositor of the voucher representing such payment said depositor shall notify the bank that the check so paid is forged; that within 30 days after the receipt of the canceled checks and vouchers by plaintiff from defendant the plaintiff did not notify the defendant that any of said canceled checks or vouchers were forged, and that ''if any of the aforesaid checks represent the withdrawals from plaintiff's account as alleged in plaintiff's complaint, then plaintiff is barred and estopped from maintaining this action by reason of its failure to notify the plaintiff [defendant] of the alleged forgeries within thirty days after having received the canceled checks or vouchers.''

Plaintiff, in its reply to the allegations intermingled with defendant's denials, denies that the money paid by defendant from the checking or commercial account which plaintiff maintained with it was upon checks signed by officers of the school district. In reply to defendant's affirmative answer it admits paragraphs I and II thereof. It further admits that at all times therein mentioned plaintiff had money on deposit with

defendant in Columbia County in its commercial department; that plaintiff from time to time certified to defendant the names of the officers of the school district authorized to transact business with the bank; and that defendant has correctly set forth the provisions of § 40-1009, O. C. L. A. Further replying to defendant's affirmative answer, plaintiff alleges that within 30 days after the return to it of the pretended warrants paid by defendant in July, 1946, out of plaintiff's funds on deposit with defendant, plaintiff notified defendant that such pretended warrants had been issued without the authority and consent of plaintiff and were forgeries. Plaintiff denies all the other allegations contained in defendant's affirmative answer which it has not expressly admitted.

The evidence discloses that between August 1, 1945, and July 24, 1946, Glen F. Hawkins was chairman of the board of directors of plaintiff school district and that Lee Schwab was clerk thereof, and during that period Schwab embezzled $34,848.94 of the funds of that school district through the medium of 114 instruments fraudulently issued by him which were paid by the defendant from the funds of plaintiff. The following is an example of such instruments:

SCHOOL WARRANT

PRESENTED BUT NOT PAID
FOR WANT OF FUNDS......................19....

DISTRICT CLERK

_____ Oregon, _____ _____ 19 45 No. 162

THE CLERK OF SCHOOL DISTRICT No. ___ _____ COUNTY, OREGON

WILL PAY TO THE ORDER OF _____

_____ $ 94.70

Ninety four & 70/100 _____ DOLLARS

OUT OF ANY MONEY BELONGING TO SAID DISTRICT NOT OTHERWISE APPROPRIATED

FOR _____

PAYABLE AT _____ BANK,

_____, OREGON

ATTEST _____

CHAIRMAN, BOARD OF DIRECTORS

_____ CLERK

Interest $ _____
Total $ _____

Other instruments differ from the foregoing only as to date, serial number, name of payee, and amount.

Between August 4, 1945, and June 20, 1946, defendant paid from plaintiff's funds $19,441.44 on 68 of such instruments which had not been authorized by the district. One instrument, for $145, was payable to Schwab personally, and one, in the sum of $480, was payable to Palmer Russell, proprietor of the Elite Billiard Parlor of Portland, Oregon. Eight instruments, aggregating $2,473, were payable to other existing persons, and the endorsements of the names of the payees were forged by Schwab. Eleven of these instruments, totaling $668, were payable to Nance Pharmacy, an existing concern. The remaining 47 of the above mentioned 68 instruments, aggregating $15,675.44, were payable to fictitious persons and the names of such fictitious payees were fraudulently endorsed by Schwab. Forty-nine of these instruments, aggregating $16,747.60, contain Schwab's endorsement in addition to the names of the payees.

Defendant, between February 9, and July 24, 1946, paid from the funds of plaintiff $15,407.50 on 46 additional instruments not authorized by the school district and bearing the forged signature of Hawkins, chairman of the board. Forty-five of these instruments were payable to fictitious persons, and on the back of the instruments the names of the fictitious persons were written by Schwab. Forty-three of the 46 instruments were endorsed by Schwab. Twenty-nine of these instruments, aggregating $10,110, were paid by the bank prior to July 2, 1946. The other 17, aggregating $5,297.50, were paid between July 2 and 24, 1946, both dates inclusive, and on August 23, 1946, within 30 days after delivery to it of such paid instruments, plaintiff school district

notified the bank that they were forged. As to these 17 instruments defendant admits that it is liable to the school district for the amount which it paid thereon.

The instruments involved in this litigation were issued by the school clerk during the school year beginning July 1, 1945, and ending June 30, 1946. Seventeen of these instruments, aggregating $5,297.50, were not paid by defendant bank until the month of July, 1946. During the school year ending June 30, 1946, there were deposited by the plaintiff in the commercial account of the St. Helens Branch Bank various sums of money aggregating $98,906.33. On July 1, 1945, there was a balance in such account of $11,392.49, making a total amount in that account during that school year of $110,298.82. Out of this account there were paid, through the medium of instruments similar in form to those here involved, all the expenses incident to the operation of the school district for the school year ending June 30, 1946.

The St. Helens Branch of the United States National Bank was established some time in 1933 and since that time plaintiff school district has had money on deposit in its commercial department. In opening this account plaintiff school district caused to be filled out and left with the St. Helens Branch one of the bank's signature cards containing the signatures "which you [the bank] will recognize in payment of funds or the transaction of other business on my (or our) account". At about the same time there was delivered to the bank on behalf of the school district a certificate, signed by the school clerk, designating the names of the officers and director or directors of the district "authorized and empowered to transact business of any character whatsoever in connection with

any checking account that'' the school district ''may have in'' the bank. As the officers and directors of the school district were changed an appropriate certificate evidencing such fact would be presented to the bank by the school district.

Each month the bank prepared a statement showing the amounts deposited in, and paid from, the district's account during the month just past, which statement and canceled instruments were made available for delivery to the school district at the beginning of the following month. At the bottom of the monthly statement was the following printed notation: ''Please examine. If not correct, report at once. If no error is reported within 30 days this account will be considered correct.'' When the monthly statement or statements and canceled instruments were delivered to a representative of the school district, such representative was required to acknowledge receipt thereof on the envelope containing the canceled instruments and which formed a part of the permanent record of the bank. On October 25, 1945, defendant delivered to the clerk of the school district all monthly statements and canceled instruments for the months of July, August and September, 1945, and on July 5, 1946, all monthly statements and canceled instruments for the months of October, November and December, 1945, and January, February, March, April, May and June, 1946. On August 22, 1946, the bank delivered to the certified public accountant, who had been engaged by the school district to audit its books, the statements and canceled instruments that had been issued subsequent to July 1, 1946.

At the conclusion of plaintiff's case in chief defendant moved for a judgment of involuntary nonsuit, which was denied, and at the close of the case it moved

for a directed verdict in its favor. The ground assigned for such motions was the same. We quote from its motion for a directed verdict:

"May it please the court, the defendant moves the court to direct the jury to return a verdict for the defendant on all amounts claimed by the plaintiff's complaint in excess of $5,297.50 for the reason that the plaintiff did not within thirty days after the return of the cancelled checks make any claim to the bank that the checks were forged. Therefore, under section 40-1009, the bank is not liable for these checks. As to the contention that there is a liability because of forged indorsements, all of these checks were paid to fictitious payees described by Mr. Schwab as names he picked out of the air, being payable to payees the indorsement thereon is not necessary; they are bearer checks; therefore there is no liability to the bank on account of any forged indorsement that might have appeared on the checks because an indorsement was unnecessary."

Plaintiff also moved for a directed verdict in its favor for the sum of $34,848.94, with interest at the rate of 6% per annum from July 24, 1946. After due consideration of the matter submitted to it for its determination, the court instructed the jury to return a verdict in favor of plaintiff in accordance with plaintiff's motion.

On this appeal defendant's brief contains three assignments of error. The first two are based upon the court's refusal to grant its motions for a nonsuit and for a directed verdict. Under the third assignment it is stated that the court erred in directing a verdict for the plaintiff against the defendant for the sum of $34,848.94 for the reason that: (a) Such ruling was based on the erroneous conclusion that the instruments

forming the basis of plaintiff's action were "school warrants", and such instruments not being "school warrants" there was no basis for the judgment entered in favor of plaintiff; (b) regardless of the reason assigned as the basis for the directed verdict, no evidence was offered showing liability on defendant's part to plaintiff on any theory whatsoever or in any amount.

■ After denial of its motion for a judgment of involuntary nonsuit evidence was introduced by defendant, and in determining in this court the questions arising on that motion the entire record is to be considered, the same as on a motion for a directed verdict. *Weygandt v. Bartle*, 88 Or. 310, 171 P. 587.

The defendant takes the position that the instruments in question are checks and that under § 40-1009, O. C. L. A., there is no liability on its part on any of the instruments that had been paid by it and redelivered, canceled, to plaintiff more than 30 days prior to August 23, 1946, when the school district first notified the bank that any of the instruments involved in this litigation were forged. Plaintiff, on the other hand, contends that such instruments are not checks within the meaning of the law merchant or the Negotiable Instruments Act of Oregon, that they are in fact warrants and as such are nonnegotiable, and subject to all the defenses available against the persons to whom issued.

Clerks of school districts of the first, second and third classes and of all high school districts are the custodians of the school funds of such districts and school funds of such districts "shall be disbursed only by the respective clerks of such districts   *   *   *   upon warrants drawn upon such district clerks by the boards of directors of the respective school districts   *   *   *

in the manner now provided by law." § 111-1611, O. C. L. A. The manner in which warrants shall be issued is provided in § 111-1081, O. C. L. A., as follows: "School warrants shall not be issued without a vote of the district school board and they must be drawn and signed by the chairman of the board and countersigned by the district clerk; provided, that if there should not be any money in the treasury, they shall be marked 'Not Paid for Want of Funds,' and said orders shall draw interest at the legal rate from the date of indorsement until paid".

Section 97-102, O. C. L. A., provides that "all warrants for the payment of money hereafter issued by cities, school districts, and other municipalities within the state of Oregon, and not paid upon presentation and so endorsed, shall draw interest at the legal rate after such endorsements  *  *  *".

There are other statutes relating to school warrants and, although they may not have any direct bearing on the questions here under discussion, they do throw some light on the character of instruments of indebtedness which school districts may issue. Authority is granted to district school boards by § 111-1016, O. C. L. A., when authorized by a majority of the legal voters, to contract a debt by borrowing money for certain specified purposes, and to issue negotiable interest-bearing warrants evidencing such debt. Such negotiable interest-bearing warrants "shall be construed as being a type of bond." § 111-1709, O. C. L. A. The instruments here involved were not issued pursuant to the provisions of § 111-1016.

Chapter 201, Oregon Laws 1943, differentiates between the character of instruments issued as evidence of indebtedness by the state or by any board, depart-

ment, commission or officer thereof and those instruments issued by any county, municipal corporation, quasi-municipal corporation or civil or political subdivision of this state. The title of that chapter is: "An act to regulate the payment of warrants, certificates of indebtedness, checks or orders issued by the state, and of warrants issued by any county, municipal corporation, quasi-municipal corporation, or civil or political subdivision of this state * * *." Section 1 of the act provides in part as follows: "No warrant, certificate of indebtedness, check or order, hereinafter in this act designated 'instrument,' issued by the state, or by any board, department, commission or officer thereof, or warrant, hereinafter in this act likewise designated 'instrument,' issued by any county, municipal corporation, quasi-municipal corporation, or civil or political subdivision in this state, * * * shall be paid, unless such instrument is surrendered and delivered to the officer charged with the payment thereof, contemporaneously with payment or prior thereto * * *."

■ It would appear from the wording of the title, and the language, of the act that the legislature did not contemplate that school districts would, or could, issue anything other than warrants in payment of their indebtedness; otherwise, it would not have made the distinction it did in the kind of instruments issued by the state, its boards, departments, commissions and officers, and those issued by counties, municipal corporations, quasi-municipal corporations and civil or political subdivisions of the state. A school district is a civil or political subdivision of the state. 47 Am. Jur., Schools, § 12, p. 304; 56 C. J., Schools and School Districts, § 11, p. 169.

■ The word "warrant" when used in relation to the

financial affairs of a county, municipality, school district, etc., has a well-defined meaning. It is, as said in 2 Dillion, Municipal Corporations, 5th Ed., § 850, p. 1283, "the command of the council, board, or official, whose duty it is to pass upon the validity and determine the amount of a claim against the municipality, to the treasurer to pay money out of any funds in the city treasury, which are or may become available for the purpose specified, to a designated person whose claim therefor has been duly adjusted and allowed." In the case of school districts the command is issued by the school board or other governing authority to the custodian of the school funds. *Dubard v. Nevin,* 178 Ark. 436, 10 S. W. (2d) 875; *Common School District No. 27 v. Twin Falls National Bank,* 50 Ida. 668, 299 P. 662.

■ It is generally held that school warrants are not, unless expressly so made by statute, "negotiable instruments and are open to all defenses in the hands of *bona fide* holders available as between the original parties". *Woodward v. School District No. 73,* 163 Or. 63, 66, 94 P. (2d) 136, and authorities therein cited. See also *School District No. 9 v. First Nat. Bank,* 58 Ariz. 86, 118 P. (2d) 78.

The reason why warrants generally have been held to be nonnegotiable is well stated in *The Mayor v. Ray,* 86 U. S. 468, 477, 22 L. Ed. 164, which has been cited many times with approval, as follows:

"Vouchers for money due, certificates of indebtedness for services rendered or for property furnished for the uses of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind, used for liquidating the amounts legitimately due to public creditors, are of course necessary instruments for carrying on the machinery of municipal administration, and for antici-

pating the collection of taxes. But to invest such documents with the character and incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregularly or fraudulently issued, is an abuse of their true character and purpose. It has the effect of converting a municipal organization into a trading company, and puts it in the power of corrupt officials to involve a political community in irretrievable bankruptcy. No such power ought to exist, and in our opinion no such power does legally exist, unless conferred by legislative enactment, either express or clearly implied.''

■ Since the word ''warrant'' has a definite and well-defined meaning, it must be presumed that the legislature intended, when it used that word in reference to the financial affairs of school districts, that it should be construed in the light of its common acceptation, for there is nothing in the context of the legislation to indicate that it was used to express a different meaning. *In re Protest of St. Louis-San Francisco Ry. Co.*, 157 Okla. 131, 11 P. (2d) 189; *Ex parte Bossner*, 18 Ida. 519, 110 P. 502.

■ As defined by the Negotiable Instrument Act, ''A check is a bill of exchange drawn on a bank payable on demand''. § 69-1002, O. C. L. A. A bill of exchange is defined by that act as ''an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time, a sum certain in money, to order or to bearer.'' § 69-901, O. C. L. A. We also quote from 10 C. J. S., Bills and Notes, § 5, p. 408:

''The Negotiable Instruments Act defines a check as a bill of exchange drawn on a bank, payable on demand. This definition accords with prior

common-law definitions of a check as a draft or order on a bank or banking house purporting to be drawn on a deposit of funds for the payment at all events of a certain sum of money to a certain person therein named or to him or his order or to bearer, and payable instantly on demand * * *."

Section 69-618, O. C. L. A., which is a part of the Negotiable Instruments Act of this state, reads as follows: "Where the instrument is made payable at a bank, it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon." Section 69-1101, O. C. L. A., provides: "In this act, unless the context otherwise requires, * * * 'Instrument' means negotiable instrument. * * *"

Defendant argues that the words, "Payable at U. S. Nat'l Bank St. Helens, Oregon", at the lower lefthand corner of each of the instruments here involved, converted to checks what would have been, without such wording, school warrants.

In *Woodward v. School District No. 73,* supra, plaintiff brought an action against the defendant to recover on seven instruments, referred to as warrants, which were issued and delivered to school teachers for salaries. They were, as appear from the exhibits in that case on file in this court, on printed forms almost identical with the printed forms used in the instant case. These instruments were, according to the opinion and as disclosed by these exhibits, payable at the State Bank of Scotts Mills. The teachers, to whom they were issued, endorsed them in blank and presented them to, and received payment from, that bank. None of these instruments were marked "Paid" by the bank. Later they were sold to plaintiff who paid the face value of the instruments plus interest from the date of their issuance. At the time plaintiff purchased them each of

these instruments "bore on its margin the endorsement of H. S. Dixon, the clerk of the school district, 'Presented but not paid for want of funds' ", and the date the instrument was issued.

This court held that these instruments, which it referred to as warrants, had been paid by the bank and that plaintiff therefore was not entitled to recover thereon from the school district "because the warrants are not negotiable instruments and are open to all defenses in the hands of *bona fide* holders available as between the original parties". The court further held: "The plaintiff can derive no benefit from the marginal endorsement on the warrants 'Presented but not paid for want of funds.' Strong circumstances suggest that these endorsements were signed by the clerk after the warrants were paid * * *. Furthermore, the uncontradicted evidence is, that the bank purchased or 'carried' the warrants only when there were not sufficient funds in the school district's account to pay them. In view of the facts that there were ample funds for that purpose at the time these warrants were presented, that they were in fact charged to the district's account, and that the reason they were not marked 'paid', as explained by J. O. Dixon, was to serve the bank's unlawful purposes, the endorsement 'Presented but not paid for want of funds', is a manifest falsehood."

*United States Pipe & Foundry Co. v. City of Hornell,* 263 N. Y. S. 89, 146 Misc. 812, was an action brought by the plaintiff against the defendant city to recover upon a city warrant. In passing upon the negotiability thereof the court said: "The instrument in question is not a negotiable instrument, but is a warrant of a municipality drawn upon its chief fiscal agent,

but is made payable at a bank. Dillon on Municipal Corporations, vol. 2, § 856; *Hornblower v. City of Pierre* (C.C.A.) 241 F. 450."

We quote from 2 Dillon on Municipal Corporations, § 856, cited in the foregoing excerpt, as follows:

" * * * The question whether there is any implied power in the officers of a town, county, or city corporation to issue warrants or orders which shall be free from equities in the hands of holders has been disposed of by a long line of decisions which denies to these warrants or orders the principal attribute of negotiability, viz., freedom in the hands of *bona fide* transferees from equities in favor of the municipality. This result is arrived at as much by reason of the purpose or object intended to be attained by these instruments as by a consideration of the lack of power, inherent or implied, on the part of municipalities to make and issue negotiable instruments without clear statutory authority therefor. Such warrants or orders, drawn for ordinary municipal expenses, *are not intended to have the qualities of commercial paper,* but are instruments authorized for convenient use in conducting the current and ordinary business of the corporation and as a means of anticipating its ordinary revenue. It would overwhelm municipalities with ruin to hold that such warrants or orders have the qualities of negotiable paper, especially that quality which protects an innocent holder for value from defences of which he has no notice, actual or constructive. All holders of such warrants or orders, even when payable to order or bearer, stand in the shoes of the payee, and their rights and remedies are often essentially different from those of the holders of authorized negotiable municipal bonds. Such is the sound doctrine, and such is the doctrine of the authorities without exception." (Italics those of author.)

See to the same effect *Hornblower v. City of Pierre,* 241 F. 450, also cited in the same excerpt.

Defendant relies on *Mt. Vernon National Bank v. Canby State Bank,* 129 Or. 36, 276 P. 262, 63 A.. L. R. 1133, in support of its contention that the instruments here involved are checks within the meaning of the Negotiable Instruments Law of this state. In that case an action was brought to recover the amount due on an instrument therein referred to as a draft. That instrument was in words and figures substantially as follows:

> "W. S. HURST & CO.          No. 141
>         Wholesale Produce
>                 Portland, Oregon, Apr. 28, 1926
>
>         At Sight
> Pay to the Order of E. P. Nelson          $1300.00
>         Thirteen Hundred and no/100          Dollars
>         To apply on car
>                 Burbank potatoes          Car No. FSE 40648
>
> Value Received and Charge
>         the Same to Account of          W. S. Hurst & Co.
>                 To W. S. Hurst & Co.          By W. S. Hurst
>                 507 Panama Bldg.
>                 Portland, Oregon
>
> Payable Canby State Bank
>         Canby, Oregon"

In holding that this instrument had all the "essential elements of a check", the court said:

> "The motion for nonsuit presents the question: Is there any evidence tending to show an acceptance of this draft by the Canby State Bank? The instrument in question purports to be a draft drawn by W. S. Hurst & Co. upon itself, payable at Canby

State Bank. Although in form a draft, it has all of the essential elements of a check. Section 7977, Or. L., thus defines a check:

"'A check is a bill of exchange drawn on a bank payable on demand.'

"When the drawer made this check payable at the Canby State Bank it was equivalent to an order on that bank to pay the same and charge to its account: Or. L., § 7879 [Now § 69-618, O. C. L. A.]; Maddock v. McDonald, 111 Or. 448 (227 Pac. 463). It is idle for the defendant bank to contend that it retained this draft in order to present it to W. S. Hurst & Co. for acceptance. The drawer had already given an order on the defendant to pay this bill at sight or on demand."

We can see little, if any, similarity between the instrument involved in the case just referred to and those which form the basis of this action. It is true that such instrument, like the ones with which we are here concerned, contains a statement that it is payable at a certain bank; otherwise, it differs very materially in form and wording. Nothing said in the Mt. Vernon National Bank case assists us appreciably in the solution of the problems which are here presented.

Each of the instruments involved in the case at bar purports to be a command or order issued by the board of directors of School District 47 Joint, Columbia County, Oregon, to the clerk of that district. §§ 111-1611 and 111-1081, O. C. L. A. The form of such command or order, as stated in each instrument, is that "The Clerk of School District No. 47 Jt., Columbia County, Oregon, will pay to the order of" a designated payee a sum certain "out of any money belonging to said district not otherwise appropriated". None of these instruments contain "an unconditional order in

writing'' requiring any person to pay on demand a certain sum in money.

█ District school boards in this state do not have either express or implied authority to issue checks, nor do they have authority to issue negotiable instruments without first being authorized to do so by a majority of the legal voters of their districts. They do have, as we have pointed out, authority to issue warrants drawn upon the respective clerks of the school districts. We think that the instruments here involved are warrants purportedly drawn by the board of directors upon the clerk of the district and payable at the bank designated on such warrants. They are not checks, and they are nonnegotiable.

██ We do not believe that the character of these instruments can be changed from nonnegotiable to negotiable instruments, or from warrants to checks, by the ''practical interpretation of the terms'' thereof by the parties dealing with them. We are not here concerned with private dealings but with matters affecting the public. A school district is an agency of the state. It derives all its powers from statute, including the manner in which its funds can be disbursed. In *Common School Dist. No. 61 v. Twin Falls Bank & Trust Co.*, 50 Ida. 711, 4 P. (2d) 342, it is said: ''The rule of law is well established that any acts of negligence, misconduct, mistake, or omissions on the part of such officers [of school districts] in the performance of their functions and duties in that respect [in a public and governmental capacity] cannot estop the school district from maintaining an action to recover back money wrongfully taken, and the doctrine is also well-settled that no laches can be imputed to a municipal corporation, acting, as it is in this case, in a

public and governmental capacity.'' Citing a long list of authorities.

■ Section 40-1009, O. C. L. A., on which defendant relies in support of its contention that it is not liable on those instruments paid by it, to which no objection to their payment was made by the school district within 30 days after receipt of the canceled instruments, reads in part as follows:

"No bank or trust company which has paid and charged to the account of a depositor a *forged or raised check* issued in the name of such depositor, shall be liable to such depositor for the amount paid thereon, unless within thirty days after the return to said depositor of the voucher representing such payment, said depositor shall notify the bank or trust company that the *check* so paid is *forged or raised;* provided, however, that if the depositor fails to call at the bank for the purpose of securing the return of said voucher within three months from the date on which such *check* is paid, then the bank shall be under no further liability on account of such payment. * * * '' (Emphasis supplied.)

The foregoing section was § 119 of chapter 207, General Laws of Oregon, 1925, and at the time of such enactment the word "check" had a well-defined meaning. Negotiable Instruments Act, General Laws of Oregon, 1899, pp. 18 to 44, inc.

The provisions of § 40-1009 have no application to the facts as disclosed by the record. The instruments in the instant case are not checks, but purported warrants, and are nonnegotiable.

It is our opinion that the Circuit Court did not err in denying defendant's motions for a judgment of involuntary nonsuit and for a directed verdict in its favor. Nor did it err in directing a verdict for plain-

tiff for the full amount therein specified. The conclusion which we have reached renders it unnecessary to discuss many other interesting questions presented by the litigants.

The judgment appealed from is affirmed.