Argued and submitted October 5, 2006, reversed and remanded February 7, 2007

REEDSPORT SCHOOL DISTRICT NO. 105,
*Plaintiff-Respondent,*

*v.*

GULF INSURANCE COMPANY,
a foreign insurance corporation,
*Defendant-Appellant.*

Douglas County Circuit Court
03CV1177CC; A127317

152 P3d 988

Lawrence A. Wagner argued the cause for appellant. With him on the opening brief was Jan D. Sokol. With them on the reply brief was Stewart Sokol & Gray LLC.

Mark B. Comstock argued the cause for respondent. With him on the brief was Garrett, Hemann, Robertson, Jennings, Comstock & Trethewy, P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Deits, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Defendant Gulf Insurance Company appeals a judgment in favor of plaintiff Reedsport School District No. 105. The trial court awarded plaintiff $58,844.16 on its first claim for relief for breach of a bond issued by defendant; alternatively, the trial court awarded plaintiff $32,619.00 on its second claim for relief for breach of the parties' alleged settlement of that dispute. On appeal, defendant raises 10 assignments of error. We need not address each of those assignments because we agree with defendant that (1) plaintiff's first claim for relief is barred by the contractual limitations period for bringing a claim on the bond, and (2) plaintiff's second claim for relief fails because the parties never entered into a binding settlement agreement. Consequently, we reverse and remand.

The following facts, which are material to our analysis and disposition, are undisputed. In May 1997, plaintiff, a public school district, entered into a public improvement construction contract with Brill's Contracting, Inc. (Brill's), for reroofing the gymnasium at Reedsport High School. Under *former* ORS 279.029(4)(b) (1995), *repealed by* Or Laws 2003, ch 794, § 332, Brill's was required to "execute and deliver" a "good and sufficient bond, to be approved by" plaintiff, "in a sum equal to the contract price for the faithful performance of the contract." Consequently, Brill's contracted with defendant for defendant to issue a performance bond in the amount of $68,689. The surety bond contains the following provision:

> "Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable."

Brill's performed the roofing work, completing the work by August 1997, and plaintiff, with the exception of the retainage of $3,450.65, paid the contract price. However, subsequently plaintiff determined that the work was not satisfactory.

On February 4, 1998, plaintiff, by letter, notified defendant of Brill's default and demanded that defendant "promptly comply with its obligations pursuant to * * * the performance bond." In May 1998, defendant responded to plaintiff's letter with an offer to settle plaintiff's claim for $32,619. Two weeks later, plaintiff rejected defendant's settlement offer.

Thereafter, and throughout much of the remainder of the parties' dealings with each other, Brill's was involved in bankruptcy proceedings. Defendant, as a creditor in those proceedings, worked with Brill's to negotiate a settlement by which Brill's would pay portions of its debts owed to defendant. Defendant notified plaintiff of that proposed settlement in January 1999, and the bankruptcy court approved it one month later. Under the terms of the settlement agreement, Brill's would pay 50 percent of any amount defendant paid to plaintiff either through settlement or judgment.

Shortly after the bankruptcy court approved defendant's agreement with Brill's, defendant once again attempted to settle the underlying dispute with plaintiff. In a letter dated April 1, 1999, defendant stated:

> "I previously wrote you approximately 10 months ago in connection with the above matter. I proposed a resolution of the District's claim against the subject Bond. * * * [Defendant] is attempting to wrap up all outstanding matters in connection with Brill's Contracting and would like to put this claim to rest. Accordingly, I would request that you inform immediately if the District is interested in pursuing the settlement along the lines I previously suggested in my letter to you [of May 1998]. If the District is no longer pursuing a claim on this project, I would appreciate your confirmation of that fact also."

Over the next 19 months, plaintiff and defendant did not discuss settling the claim on the bond. However, on

November 21, 2000, plaintiff responded to defendant's April 1, 1999, letter as follows:

> "[Defendant's] offer to settle [plaintiff's] claim against the subject bond for $32,000 is unconditionally accepted. Please forward the check together with your form of release."

Defendant refused to pay.

Plaintiff initiated this action on March 24, 2003, more than five years after initially declaring Brill's to be in default and notifying defendant of its claim on the bond. In its complaint, plaintiff alleged two claims for relief. In its first claim for relief, plaintiff demanded $58,844.16 for breach of the bond. In its second claim for relief, as an alternative theory of recovery, plaintiff demanded $32,619.00 for breach of the settlement agreement allegedly entered into in November 2000.

In its answer, defendant asserted a number of affirmative defenses and counterclaims. Among its affirmative defenses, defendant argued that plaintiff's first claim for relief was barred by the express time limitations in the bond and that plaintiff's second claim for relief was improper because the parties never entered into a settlement agreement.[1] Later, defendant reiterated both of those arguments in a motion for summary judgment.

The trial court rejected defendant's arguments. As relevant here, the court held that the six-year limitation period of ORS 12.080, not the two-year limitation period specified in the bond, applied to plaintiff's first claim for relief. In addition, the court held that defendant had offered in April 1999 to settle the underlying dispute and that plaintiff "unconditionally accepted the offer" in its November 2000 letter. Consequently, the court concluded that plaintiff is entitled to a judgment in the amount of $58,844.16, plus interest. "In the alternative," the court continued, "plaintiff is entitled to judgment against [defendant] in the sum of $32,619 for breach of the settlement agreement * * *." The

---

[1] In addition, defendant asserted, *inter alia*, that plaintiff's claim on the bond was precluded as a consequence of the bankruptcy court's entry of an order by which it "exonerated" the performance bond issued by defendant.

court then entered a judgment awarding plaintiff $58,844.16. Defendant appeals.

On appeal, defendant raises 10 assignments of error. The first six assignments pertain to plaintiff's recovery on the performance bond, and the remaining four pertain to the recovery for the alleged breach of settlement. As explained below, we conclude that defendant's second assignment of error—*viz.*, that recovery on the bond was precluded by the bond's two-year limitation provision—compels reversal with respect to the first claim for relief. Consequently, we need not, and do not, address defendant's other assignments of error pertaining to that claim, including several relating to asserted effects of the bankruptcy court's "exoneration order." *See* 210 Or App at 683 n 1. We further conclude, as asserted in the eighth and ninth assignments, that the trial court erred in determining that plaintiff timely accepted defendant's alleged "offer" of settlement. Accordingly, we reverse the judgment for plaintiff on the second claim for relief and do not address the other assignments of error.

We begin by observing that there appears to be some logical and practical tension, if not outright inconsistency, in the trial court's disposition. Legally and logically, if the parties entered into an enforceable settlement of plaintiff's bond claim, and plaintiff sued for damages in the amount of the settlement, then plaintiff should be limited to recovery for breach of the settlement (*i.e.*, the second claim for relief). That is, plaintiff should not be able to recover *both* on the bond *and* for breach of the settlement. However, the trial court purported to resolve both claims in favor of plaintiff and to award damages on the bond despite finding that the parties had an enforceable settlement agreement and awarding damages for breach of the alleged settlement. Nevertheless, we need not resolve that apparent inconsistency because we conclude that the court erred in its disposition of both of the alternative claims.

We begin by addressing plaintiff's second claim for relief because, as noted, if the parties entered into an enforceable settlement agreement, plaintiff's recovery of damages for breach of that agreement would preclude plaintiff's recovery on the bond. In its eighth and ninth assignments of error,

defendant contends that, even if its April 1, 1999, letter embodied an enforceable offer,[2] plaintiff's November 2000 response did not effect a legally enforceable acceptance, either because plaintiff did not accept in the manner invited and specified in defendant's letter (*viz.*, "inform *immediately* if the District is interested in pursuing the settlement" (emphasis added)) or because plaintiff did not accept within a reasonable time. We agree with both of those alternative contentions.

An offer to form a contract may limit acceptance in any way. *See Cochran v. Connell*, 53 Or App 933, 937, 632 P2d 1385 (1981). Here, defendant's offer unequivocally required an "immediate" response. In ordinary practice and common understanding, a response after 19 months is not "immediate."[3] Nor has plaintiff identified any circumstances peculiar to these parties' interactions that would otherwise render a delay of 19 months "immediate." To the contrary, with the bankruptcy court approving the agreement between defendant and Brill's, all the pieces were in place in the spring of 1999 to complete a settlement between defendant and plaintiff.

Further, and alternatively, when no time is specified, "[a]n offeree's power of acceptance is terminated * * * at the end of a reasonable time." *Restatement (Second) of Contracts* § 41(1) (1993). Here, plaintiff not only failed to respond to the offer for 19 months, but also did not ever inform defendant that it was even considering the offer. Again, plaintiff has not identified any circumstances justifying a 19-month delay as contextually "reasonable."[4]

Because plaintiff did not accept defendant's "offer" within a reasonable time, much less "immediately" as specified in the April 1, 1999, letter, plaintiff's purported acceptance 19 months later was ineffective. Consequently, the trial

---

[2] Defendant's seventh assignment of error challenges the trial court's determination to that effect.

[3] Indeed, the common definition of "immediate" is "occurring, acting, or accomplished without loss of time : made or done *at once*." *Webster's Third New Int'l Dictionary* 1129 (unabridged ed 2002) (emphasis added).

[4] Plaintiff's brief states that plaintiff "spent time debating whether to accept what it felt was [defendant's] inferior offer or incur significant attorney fees in an attempt to recover a larger sum."

court erred in determining that plaintiff was entitled to prevail on the second claim for relief.

We turn, then, to plaintiff's first claim for relief for recovery on the performance bond. As noted, in its second assignment of error, defendant argues that the trial court erred in rejecting its defense that plaintiff's claim on the bond is barred by the bond's two-year limitation period. Plaintiff does not deny that it initiated this action more than two years after Brill's defaulted on the underlying improvement contract. Plaintiff argues, however, that the six-year statute of limitations for contracts, ORS 12.080, applies, or, alternatively, that no limitation period applies.[5]

In arguing that the contractual two-year limitation does not apply, plaintiff points to the language of the bond, which states that, if the stated two-year limitation period is "void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable." Plaintiff also points to a provision in the bond that "delete[s]" "any provision * * * conflicting with * * * statutory or legal requirement[s]." From those provisions, plaintiff argues that the two-year limitation period "conflicts" with Oregon law because ORS chapter 12 prescribes different limitation periods.

In particular, plaintiff first asserts that the contractual limitation period conflicts with ORS 12.080(1), which provides for a six-year limitation period for "[a]n action upon a contract." Plaintiff contends that that provision prescribes an *exclusive* limitation period for all contractual disputes and, thus, any shorter contractually prescribed period is necessarily in "conflict" with the statute. That argument, however, rests on an incorrect premise. It is well established that "[t]he parties to a contract may stipulate that an action for a breach of an agreement must be brought within a certain period[.]" *Ausplund v. Aetna Indemnity Co.*, 47 Or 10, 22, 81

---

[5] Plaintiff also argues that defendant is barred, by waiver and estoppel, from invoking the contractual limitation period as a defense. We reject those arguments without extended discussion. Suffice it to say that plaintiff failed to raise those contentions below and that they would almost certainly implicate development of the factual record. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 658-60, 20 P3d 180 (2001). In all events, plaintiff did not adduce facts sufficient to substantiate those contentions.

P 577 (1905). Thus, the limitation period found in ORS 12.080(1) is not exclusive but is, instead, effectively a "default" provision—that is, the statutory limitation period governs "[a]n action upon a contract" unless the contracting parties have specified a different limitation period.[6]

Plaintiff argues in the alternative that the bond's limitation period conflicts with ORS 12.250. That provision states:

> "Unless otherwise made applicable thereto, the limitations prescribed in this chapter [ORS chapter 12] shall not apply to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit."

Contrary to plaintiff's position—and as the text of ORS 12.250 expressly states—that statute exempts public bodies only from the application of "limitations prescribed in this chapter," i.e., *statutes* of limitation. Nothing in ORS 12.250 or any other Oregon authority of which we are aware purports to limit a public entity's ability to agree contractually to a limitation period, just as any other contracting entity can.[7]

Finally, plaintiff argues that, because it was not directly involved in negotiating the terms of the bond, it should not be bound by the bond's limitation provision. Plaintiff fails to recognize that it was required by *former* ORS 279.029(4)(b) to *approve* the bond. Because plaintiff had an opportunity to review and reject the limitation period if it so chose, plaintiff's present claim that it should be able to avoid the operation of the contractually prescribed limitation is unavailing.

---

[6] Plaintiff also argues that adherence to the limitation period found in ORS 12.080(1) is required by *former* ORS 279.029 (regulating public improvement contracts) and that our holding in *Wegroup PC v. State of Oregon*, 131 Or App 346, 885 P2d 709 (1994), restricts the ability to modify that limitation. *Wegroup* is inapposite. Although ORS chapter 279 does prescribe certain nonwaivable requirements for public improvement contracts, ORS chapter 279 does not *require* any limitation period or otherwise *restrict* the parties from creating one of their own. Nothing in *Wegroup* is to the contrary.

[7] *Shasta View Irrigation Dist. v. Amoco Chemicals*, 329 Or 151, 986 P2d 536 (1999), and *School Dist. 47 v. U. S. Nat'l Bank*, 187 Or 360, 211 P2d 723 (1949), which plaintiff invokes, do not support its position. Both of those cases address the application of statutory time limits to public bodies.

The trial court erred in failing to dismiss plaintiff's first claim for relief.

Reversed and remanded.